Clifton A. SMITH, etc., Plaintiff,

v.

UNITED STATES, Defendant.

Civ. A. No. 2204.

United States District Court
E. D. Virginia,
Norfolk Division.

Oct. 21, 1957.

Louis B. Fine and Jerrold G. Weinberg, Norfolk, Va., for plaintiff.

L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

This is an action for damages brought by Clifton A. Smith, an infant, by Lillian E. Smith, his mother and next friend, against the United States of America under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b). The injuries resulted from the explosion of a rocket fuze [1] which Smith, a young boy of the age of seventeen, found near a railroad track in the City of South Norfolk, Virginia.

The material facts are shown by the pleadings, interrogatories and answers thereto, depositions and stipulation. Upon these facts both parties have moved for summary judgment pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Counsel for plaintiff concede that all material facts are before the Court other than the inquiry as to damages.

Plaintiff was injured while attempting to dismantle the fuze which he and a companion had found in a wooden box adjacent to the railroad tracks of the Norfolk & Portsmouth Belt Line Railroad in the City of South Norfolk. In June, 1955, the plaintiff, then a senior in high school, and another boy, discovered the wooden box containing approximately 20 rocket fuzes, one of which subsequently exploded or was caused to explode, inflicting the injuries complained of in this action. The box, when found, was in the edge of an adjacent field approximately ten feet from the railroad track. Upon investigation the boys found the box to contain tin cans, one of which they removed and took to the Smith home. At the house, Smith and his companion removed the top from the can, took one fuze out and not being, at the time, sufficiently intrigued, threw it away. The boys then buried the wooden box in which the remainder of the fuzes were located.

On January 22, 1956, the plaintiff, together with another youth, returned to where Smith and his previous companion had buried the wooden box in June, 1955. The boys excavated the box, removed one of the cans containing the rocket fuze, and then again reburied the box.

The wooden box in which the cans of fuzes had been found was marked as follows:

(1) On the top of the box:

"24 Fuzes Rocket PD MK 149–0 Lot 6M Handle Carefully This Side Up"

"Detonating Fuze Handle Carefully Do Not Store Or Load With Any High Explosive"

(2) On the side of the box:

"24 Fuzes Rocket PD MK 149–0 Lot 6M Pros 40746 6–52 USN WT 97 LBS CU. FT. 1.76"

The metal container or can in which the individual fuze was packed had marked on the outside "Fuze Rocket PD MK 149 Mod O Lot 6M USN."

Carrying the can home, plaintiff opened it with a can-opener and removed the fuze. To a small wire lock and pin holding a protective cap on the nose of the rocket fuze was fastened a tag on which was printed: "Safety pin must not be removed until arming wire has been inserted (use one clip), and rocket has been placed in launcher. If rocket is not fired, safety pin must be replaced before removing arming wire".

Plaintiff removed the wire pin and lock holding the protective cap on the nose of the fuze, at which time the cap was projected approximately ten yards by a small spring which served as a safety device, its purpose being to prevent a small propeller from accidentally revolving thus arming the fuze. Plaintiff bent upwards the metal fins on the propeller, depressed a small propeller locking pin, which then enabled him to

---

1. This fuze is an air arming, impact firing fuze designed for use by the military in conjunction with aircraft rockets.

turn the propeller manually to arm the rocket fuze.[2] Being unable further to solve the intricacies of the fuze, plaintiff then struck with a hammer the firing pin of the armed rocket fuze with sufficient force to depress the pin, activating the lead-in charge which in turn activated and exploded the booster charge, the resulting explosion shattered the fuze, injuring plaintiff who required hospitalization for a fourteen-day period.

Plaintiff's claim for recovery rests upon three grounds: (1) the rocket fuzes, being highly explosive and inherently dangerous, constituted a nuisance; (2) the United States was negligent in failing to place any warnings of the explosive nature of the rocket fuze on the wooden box or on anything contained therein; and (3) the United States was negligent in storing, handling and transporting the wooden box containing the fuze.

In disclaiming liability, the Government urges (1) that there was no negligence on the part of the Government; (2) that assuming negligence on the part of the Government, the injuries complained of were the result of the wrongful act of plaintiff in converting the box and its contents to his own use, and, in any event, the acts of said plaintiff in causing the explosion were not reasonably foreseeable; (3) that plaintiff's own acts constituted negligence which was the sole and proximate cause of his injuries. In addition, the defendant urges that the exception set forth in 28 U.S.C.A. § 2680(a) is applicable, relieving it from liability in instances "where a claim is based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation", i. e., where the operations of the Government are in the process of being carried out in accordance with official directions.

 The manufacture, keeping or storing of explosives is not *per se* a public nuisance. 66 C.J.S. Nuisances § 47a, p. 797; 22 Am.Jur., Explosion and Explosives, § 28, p. 157. Whether or not such acts do constitute a nuisance depends upon the surrounding circumstances such as locality, quantity or manner of manufacture or storage. Where the manufacturing, transportation, storing or keeping of explosives is in violation of law, there may be, dependent upon the jurisdiction involved, liability on the wrongdoer on the theory of nuisance. Cameron v. Kenyon-Connell Commercial Co., 22 Mont. 312, 56 P. 358, 44 L.R.A. 508; 11 A.L.R. 719, 12 A.L.R. 1311. The same liability is occasionally imposed on the ground that it is negligence *per se*, 12 A.L.R. 1312, 48 L.R.A.,N.S., 879. It is settled law in Virginia that care required of one who keeps or stores explosives is a matter of relativity, in that the care to be exercised must be in proportion to the danger involved. Daugherty v. Hippchen, 175 Va. 62, 7 S.E.2d 119; Rieder v. Garfield Manor Construction Corp., 164 Va. 192, 178 S.E. 677. No case has been cited in which a Virginia court has decided that the manufacture, storage or transportation of explosives has been held to be a nuisance *per se*.

There is no showing that defendant was negligent in the manufacturing, storage or transportation of the rocket fuze in question. It is conceded by the defendant, in answer to interrogatories propounded by plaintiff, that the lot of rocket fuzes was manufactured by the defendant at the Naval Ordnance Plant, Macon, Georgia. From Macon the lot was shipped via motor freight to the Naval Ammunition Depot in Crane, Indiana. The fuzes were then shipped by means of a sealed railroad box car, destined for delivery to the United States Marine Corps Air Station at Cherry Point, North Carolina.

In the stipulation before the Court the parties have agreed that each rocket fuze was contained in a separate metal can and that 24 cans were contained

2. It is necessary for there to be approximately eight revolutions, elevating the propeller about half an inch to accomplish this act.

in a wooden box marked in the manner heretofore described.[3]

There is no evidence before the Court that the defendant was in any manner negligent in the storing, handling or transporting of the rocket fuzes in question. To impose liability on the defendant because of the storing, handling or transporting of the fuzes, it must be shown that such was done negligently or under such circumstances as to create a public nuisance. 35 C.J.S. Explosives § 5(a) (b); Eaton v. Moore, 111 Va. 400, 69 S.E. 326; Rieder v. Garfield Manor Corporation, supra. In conjunction with plaintiff's allegation that defendant was negligent in failing to place warnings of the dangerous and explosive nature of fuzes on the box or anything contained therein, the Court must consider the recent decision, relied upon by plaintiff, rendered by the Virginia Supreme Court of Appeals in McClanahan v. California Spray-Chemical Corp., 194 Va. 842, 75 S.E.2d 712, a case in which a chemical spray manufacturing company was held liable to a user of its products because of its failure to adequately warn prospective users of latent dangers inherent in, and common to, that class of articles. Neither defective manufacture nor failure to accomplish intended purposes was involved. The decision in the McClanahan case was based on the breach of the duty to warn[4] which the court found was imposed by virtue of the Virginia Insecticide Fungicide and Rodenticide Law, codified in Chapter 12, Title 3, of the Code of Virginia, 1950. The holding in McClanahan is distinguishable in this respect in its application to the facts now before this Court, and the implications from that decision must be confined to that class of cases in which the duty to warn is owed to prospective users of, or persons who, within the reasonable contemplation of the manufacturers, are expected to use the product in question. The duty to caution or warn of unusual hazards or dangers must only arise where there is a reasonable anticipation that the use of a product as instructed or directed will produce injury. Negligence based on the failure to warn requires actual or constructive knowledge of the danger on the part of the manufacturer, and the lack of a warning notice. Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608; McClanahan v. California Spray-Chemical Corp., supra. The holding in McClanahan was predicated on the breach of the statutory duty imposed on the manufacturer to warn prospective users of dangers which conceivably are in the product. The court construed the Virginia statute as requiring the manufacturer to give both directions for use and a warning where necessary.

In the matter now under consideration, there is no contention that any statute has been violated.

Assuming arguendo that there is a duty on the United States, as a manufacturer of the explosive fuze, to warn prospective users or persons who may reasonably be anticipated to come in contact with same, could the Court conclude that the wording used on the wooden box, the metal container, and on the tag attached to the fuze, was sufficient warning to put a reasonably prudent man on notice of the dangerous nature of the rocket fuze found by Smith?

Considering all of the circumstances, the Court is of the opinion that the wording on the box, can, and tag

3. The markings on the outside of the box were in compliance with the specifications for the rail transportation of explosives as set forth in the Motor Carriers' Explosives and Dangerous Articles Tariff No. 8, published pursuant to Interstate Commerce Commission Regulations. See 18 U.S.C.A. § 35. The markings also complied with the specifications set forth in the Navy Ordnance Shipping Handbook, which are, in all material essentials, taken from the ICC regulations referred to above.

4. For an illuminating discussion of the "Duty to Warn", see the scholarly article, "Product Liability: Directions for Use and the Duty to Warn", 41 Va.L.Rev. 145.

constituted as a matter of law a sufficient warning of the dangers inherent in the article. See United States v. Inmon, 5 Cir., 205 F.2d 681, 682, where "Blasting Caps—Do Not Carry *Loose* in Your Pocket" on the cartons from which the blasting caps were removed was held to be full warning of the inherently dangerous propensities in blasting caps.

Plaintiff, at the time he found the fuzes, was a senior in high school and must be assumed to be a mature boy of ordinary intelligence, in full possession of his faculties. As set forth in more detail above, the box in which the metal containers were found had stenciled on the top: "24 Fuzes Rocket ... Handle Carefully" and "Detonating Fuze ... Handle Carefully Do Not Store or Load with any High Explosive". The can containing the fuze identified its contents as being "Fuze Rocket". The tag attached to the fuze also would apprise the reader thereof, or at least be sufficient to put a reasonable person on notice of the nature of the article to which it was attached. The wording used in marking the box, can, and tag was certainly sufficient to put a person of ordinary intelligence on notice of the dangers inherent in the article to which they referred. It was appreciably more than mere directions for use as suggested by plaintiff. The United States is not to be held negligent in failing to use more specific language in marking the rocket fuze and its containers.

■ The rocket fuze was manufactured and intended to be used only by the United States. Sufficient directions for use and warnings were attached to the fuze to enable those for whom use was intended to be made aware of the dangerous nature of the fuze. If the Court were to adopt plaintiff's theory of liability, the United States would be an insurer for whatever injuries conceivably might be caused by the fuze, no matter how it arrived in the possession of the injured party, or what was done with it thereafter. Possession may be obtained through a source for which the United States is in no way responsible, which is apparently the situation now before the Court. This would impose upon the United States the duty of anticipating that these fuzes could conceivably fall into the hands of the public at large in a manner not reasonably contemplated. Plaintiff's theory leads to an illogical conclusion. The Government would be required to anticipate and reasonably expect that a sealed box car of boxed fuzes would be broken into, that one of the boxes would be removed, that one metal container would be removed from the wooden box, and that the fuze within the metal container would be removed, armed, and struck in such a manner as to cause it to explode.

Reasonable men cannot differ in the conclusion that there was no unreasonable risk of harm in what defendant did, or that a reasonable person in the Government's position would have protected its property any differently. The United States took sufficient precautionary steps to protect and warn against dangers inherent in the rocket fuzes.

In Rieder v. Garfield Manor Corp., supra [164 Va. 192, 178 S.E. 678], the Virginia court refused to permit the defendant's alleged negligence to be considered by the jury where plaintiff, seven years old, forcibly entered defendant's building, removed some fuze caps and was subsequently injured by the explosion of one of the caps. Though the building in which the caps were stored was flimsy, the court held that defendant, in clinching the door hasp on the building after it was tampered with by children on a previous visit, was not chargeable with negligence because he did not secure the door "as to make it impossible for a seven year old boy, on mischief bent, to forcibly break the fastening and enter the building".

In Mason v. G. & W. H. Corson, Inc., 3 Cir., 230 F.2d 393, the court held that defendant was guilty of no negligence in anticipating that boys of the age of fifteen years would break into a magazine on defendant's property, take away

some dynamite, and hide it in a place where a younger child might obtain access to same, thereby causing an injury to the younger child.

The Seventh Circuit, in Stewart v. United States, 186 F.2d 627, held the Government liable for injuries caused by the explosion of a grenade where the boxes in which the grenades were stored were labeled "Fireworks" and their storage was in violation of the Illinois law, even though stored on a military reservation surrounded by a six-foot woven wire fence topped with three strands of barbed wire. That case is distinguishable from the one now before this Court in that, under the Illinois law, the owner of a dangerous instrumentality is responsible for damages caused by that instrumentality when he fails to adhere to a statutory standard of safekeeping, and the Government failed to comply with the statutory requirements regarding the storage of explosives. See Ostergard v. Frisch, 333 Ill.App. 359, 77 N.E.2d 537.

In Schmidt v. United States, 10 Cir., 179 F.2d 724, 728, the court affirmed the dismissal of a complaint for failure to state a cause of action, saying that the actions of plaintiff's father in taking home an unexploded bazooka shell constituted an intervening cause which alone was the proximate cause of injury caused by an exploding shell, even though the United States might have been negligent in failing to remove the shells, or in allowing one a license to go on any part of the military reservation for a lawful purpose in the absence of having cleared the premises of such shells. The court said:

"* * * the Government could not reasonably anticipate that an adult, mature man of ordinary intelligence, who was on the reservation under a license for a specific purpose would commit a trespass and wilfully take with him home property which he had no right to take."

The above cases are to be contrasted with the line of decisions illustrated by Luhman v. Hoover, 6 Cir., 100 F.2d 127, 129, where dynamite caps were in an unfastened pocket in a truck parked in an area accessible to children and in which area children were accustomed to playing. The court held that "when one [who] keeps a dangerous article exposed where children are likely to come in contact with it, and where such contact is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to occur, and is bound to take reasonable care to prevent it."

■ The United States could not reasonably have anticipated the independent action of an unauthorized person opening the sealed box car loaded with rocket fuzes; nor could it anticipate that someone would take a box of the fuzes therefrom. It is settled law in Virginia that where an independent act of a third party intervenes between negligence, if any, of the defendant and the resulting injury, which is its immediate cause, no recovery can be had. Wallace v. Jones, 168 Va. 38, 190 S.E. 82; Huffman v. Sorenson, 194 Va. 932, 76 S.E.2d 183.

There remains for consideration the defendant's contention that the action upon which liability is attempted to be imposed is an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, and because of that fact is, by virtue of 28 U.S.C.A. § 2680(a), not within the waiver of governmental immunity under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b).

■ The Government, relying primarily on Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, contends that Congress by the Tort Claims Act did not waive governmental immunity from liability for the negligence of its employees in the manufacturing, storing, and transporting of the fuzes in question, because such employees were exercising due care in the execution of a Navy Department Regulation and the Regulation of the Interstate Commerce Commission. The Gov-

**612**

ernment has attempted to liken its liability to that of a municipal corporation or other public body by an alleged distinction between those functions which are of a proprietary nature and those which are uniquely governmental. This distinction was expressly rejected in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48, where the court held that the test established by the Tort Claims Act for determining the liability of the sovereign is whether a private person would be responsible for similar negligence under the laws of the state where the acts occurred. See also, Rayonier, Inc., v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354. The broad language of exculpation in Dalehite was limited by Indian Towing Co. and Rayonier, Inc., and in the light of these latter decisions the court is of the opinion that the exclusion set forth in § 2680 finds no application to the factual circumstances now before it. It is conceivable that all actions by employees of the Government are pursuant to a statute or regulation of the United States. In addition, § 1346(b) has been construed as conferring general jurisdiction on federal courts of the subject matter of claims coming within its purview and that the exceptions referred to in § 2680(a) are available to the Government as a defense only when aptly pleaded and proven. Stewart v. United States, 7 Cir., 199 F.2d 517; Boyce v. United States, D.C., 93 F.Supp. 866. In the matter now before the court such defense has not been raised in any pleadings heretofore filed.

For the reasons herein stated, defendants' motion for summary judgment must be granted and plaintiff's like motion will be denied. Counsel for defendant will prepare an appropriate order in accordance with this opinion, which is adopted by the Court in lieu of specific findings of fact and conclusions of law, and, after presentation of the order to counsel for plaintiff for inspection and endorsement, present the same to the Court for entry.