317 F.2d 102
 Curtis F. RIVERS, Appellee,
v.
J. LEITMAN, sometimes known as Jake Leitman, in his own right and trading as Exchange Sales Company and Joe Leitman in his own right and as Manager of Exchange Sales Company, Appellants, and
Sperry Rand Corporation, a Delaware Corporation, Sperry Gyroscope Corporation, a Delaware Corporation, and the United States of America, Appellees.
 No. 8895.
 United States Court of Appeals Fourth Circuit.
 Argued April 3, 1963.
 Decided April 25, 1963.
 
 1
 William L. Shapero and Maurice B. Shapero, Norfolk Va. (Shapero & Shapero on the brief), for appellants.
 
 
 2
 Francis H. Hare, Birmingham, Ala., and George E. Allen (Ashby B. Allen, Richmond, Va., Hare, Wynn, Newell & Newton, Birmingham, Ala., and Allen, Allen, Allen & Allen, Richmond, Va., on the brief) for appellee, Curtis F. Rivers.
 
 
 3
 Paul M. Bernstein, New York City (Edward L. Ryan, Jr., Albany, N. Y., Chadbourne, Parke, Whiteside & Wolff, New York City, and White, Ryan & Reynolds, Albany, N. Y., on the brief), for appellees, Sperry Rand Corp., and Sperry Gyroscope Corp.
 
 
 4
 Roger T. Williams, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on the brief) for appellee, United States.
 
 
 5
 Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and HARRY E. WATKINS, District Judge.
 
 
 6
 HARRY E. WATKINS, District Judge.
 
 
 7
 Defendants (Leitmans) own and operate a store in which they sell war surplus materials. Plaintiff, Rivers, entered the premises as a prospective purchaser. As he approached Joe Leitman and spoke to him, Leitman held in his hand a gyro-horizon indicator.[1] Although Leitman knew nothing about the instrument or how it should be tested, he was attempting to operate it with a hose attached to a tank containing not less than 85 pounds per square inch of compressed air. The excessive pressure caused the instrument to explode in the face of plaintiff, necessitating the removal of plaintiff's right eye. The corporate defendants and the government, manufacturers and sellers, respectively, of the instrument, were sued along with the Leitmans for negligence. The case was tried to the Court without a jury, and the Court found that the Leitmans were guilty of negligence that proximately caused plaintiff's injury; that the corporate defendants and the government were not guilty of negligence, and awarded the plaintiff $140,000.00 as damages. The Leitmans appealed and say that the findings of fact of the trial judge were clearly erroneous and that the judgment was excessive. We find no merit in either of these contentions and affirm the judgment below.
 
 
 8
 Plaintiff has not appealed from the judgment in favor of the Sperrys, the manufacturer, or the United States, the seller of the instrument, taking the position that their alleged negligence was a question of fact resolved against him by the Court. However, the Leitmans filed a cross claim against the Sperrys and the government, and now claim that the finding of the Court that such defendants were not negligent was clearly erroneous.
 
 
 9
 There is very little dispute in the evidence as to what happened, the parties differing primarily as to the reasonable inferences to be drawn from such facts.
 
 
 10
 On or about January 7, 1960, the defendants, Leitmans, were engaged in the sale of merchandise at their place of business in Norfolk, Virginia, to which the public was invited for the purpose of inspecting their merchandise. Among the items for sale in such store was an instrument known as a gyro-horizon indicator, manufactured by one of Sperry's predecessor corporations. This particular instrument and thousands of similar ones were sold by Sperry to the United States under government specifications of February, 1943, for installation on military aircraft during World War II. At the time of delivery to the government, they were accompanied by manuals containing complete instructions concerning their operation, installation and maintenance. None of this literature was delivered to the Leitmans upon the sale of these instruments.
 
 
 11
 The gyro-horizon indicator is a delicate sensitive precision instrument and its testing or mechanical maintenance requires the skill and experience of trained personnel, their qualifications being specified in government regulations. It serves to indicate to the pilot the pitch and roll of his aircraft when he does not have visual contact with the ground. It is a vacuum instrument and has a hole in the rear of the instrument labeled "Air Inlet," impressed in the metal, and additional holes in the side. It is not designed for any air to be put through the hole labeled "Air Inlet" other than air that flows in at atmospheric pressure as a result of a vacuum being created in the instrument by a suction pump applied to one of the other holes. The holes, including the one marked "Air Inlet," have standard ¼ inch pipe threads. In his findings of fact, the trial court describes its operation as follows: "* * * it operates by a vacuum pump drawing air out of the instrument case through a hose connected to an air outlet port. This creates an air pressure inside the case slightly less than normal atmospheric pressure. The pressure differential between the outside and the inside of the case causes air at atmospheric pressure to flow into the instrument through the air inlet port. The prescribed pressure differential, as specifically set forth in instruction manuals furnished to the government by Sperry and subsequently published by the government, should be approximately 4 inches of mercury (the equivalent of two pounds per square inch) and in no event more than 5 inches of mercury (two and one-half pounds per square inch). The air inlet port (through which air at atmospheric pressure enters the instrument) is labeled `Air Inlet' and is threaded to permit the attachment of a hose at the other end of which is a filter. The purpose of the filter is to assure that the air flowing into the instrument is free from foreign matter."
 
 
 12
 The government decided that many of these indicators then on hand at the Naval Air Station, Norfolk, Virginia, were no longer needed by the government, and invitations to submit competitive bids on them were tendered to surplus dealers who had expressed an interest in purchasing aircraft components. When the bids were opened on July 13, 1954, the highest acceptable bid ($1.39 each) was submitted by the Leitmans for the purchase of 693 gyro-horizon indicators. The conditions of sale provided for sale without warranty or guaranty, and provided that the government's liability to the purchaser, if any, should not exceed refund of the purchase price, or such portion thereof as the government may have received. The invitation to bid described the instruments as "used, repairs required, good condition." At no time before or after the sale did the Leitmans make any effort to ascertain the manner in which the instruments operated or the correct method of testing them.
 
 
 13
 On January 7, 1960, about five and one-half years after the government had sold the instruments to the Leitmans, and some fifteen years after their manufacture by Sperry, the plaintiff went to the Leitman premises as a prospective customer with a view toward buying used mining equipment for resale, but not a gyro-horizon indicator. After entering the Leitman premises, plaintiff inquired of a workman whom he should see about possible purchases, whereupon the defendant, Joe Leitman, came out of the store with the gyro-horizon indicator in his hand. As plaintiff came up to him, he took a hose attached to an air compression tank and placed it against the hole in the gyro labeled "Air Inlet" and told the workman to turn on the compressed air. The compressed air in the tank had a pressure of 85 to 100 pounds per square inch and possibly more, although the evidence is inconclusive as to the amount of pressure actually turned on. When the pressure was turned on, the gyro exploded, and pieces of the instrument were thrown into plaintiff's face, striking his right eye. The injury was such as to cause plaintiff to lose the sight of the eye by surgical enucleation. Plaintiff had never seen such an instrument before and knew nothing about how to test it. There was no label on the instrument warning against the use of excessive amounts of compressed air, although there was enough space on it to place such warning. The explosion was very violent, bending the tempered steel metal and breaking the glass covering (one-eighth inch in thickness) on one end of the gyro. Any substantial pressure in excess of atmospheric pressure applied to the instrument would cause it to explode. There was no mechanical device on the air compressor tank to regulate or measure the amount of pressure discharged through the hose to the gyro. Leitman knew nothing about the manner of testing such a specialized instrument and took no precautions against the danger that it might blow up. He knew enough about pressure to know that enough air pressure would blow up anything. For example, it is quite obvious that if enough air was put into an automobile tire it would likely explode and may cause personal injury.
 
 
 14
 This was a special purpose instrument intended for use by a limited class of trained and qualified persons and, when used as intended, is perfectly safe and is not "inherently dangerous".
 
 
 15
 Although Sperry knew that it was dangerous to test the instrument with compressed air, it did not put a label on the instrument warning of any such danger. Sperry knew that while gyros were not normally resold by the government that sometimes this happened.
 
 
 16
 The Court found, and we think properly, that "the act of Joe Leitman in applying compressed air from a high pressure tank to the instrument in the way that he did was grossly negligent and was not a reasonably foreseeable act and it was an act by a person for whose use the instrument was not intended and was in connection with a use for which the instrument was not intended"; that Sperry "could not have anticipated that an unqualified surplus dealer completely ignorant of the proper procedures, would attempt to test the Gyro". The Court also found that:
 
 
 17
 "3. Neither of the defendants Sperry Rand Corporation, Sperry Gyroscope Corporation, nor the United States of America was guilty of negligence which proximately resulted in or contributed to the plaintiff's injury. None of said defendants owed any duty to warn against acts or dangers not reasonably foreseeable by persons for whose use the offending instrument was not intended in connection with a use for which the instrument was not intended. The Horizon Indicator involved in this accident was not intended for use by an unqualified person putting excessive quantities of compressed air in it to test it, and such use by Joe Lietman was not reasonably foreseeable either by the manufacturers or the United States of America and they were therefore not under any obligation to warn against such act or danger."
 
 
 18
 Such findings of fact are not clearly erroneous, but are supported by substantial evidence, and we find no error in the Court's conclusions of law.
 
 
 19
 In assessing damages, the trial court made specific findings of fact, which we find to be supported by substantial evidence, and bear repeating here. The Court found:
 
 
 20
 "At the time of the accident the plaintiff was 30 years of age and in good health. He was employed by his father in a business which salvaged, bought and sold mining and industrial equipment, largely used equipment, from abandoned mines and industrial sites. At the time of the accident he was earning $9,000.00 a year and had recently received offers from others in the same business at substantially more money which he declined in favor of promised advancement in the immediate future in his father's employment. The injury to the plaintiff involves factors which make this an especially bad case for the loss of an eye. They include among others the following:
 
 
 21
 "`1. With the enucleation of the right eye the wound did not heal. Drainage and infection persist and notwithstanding three surgical operations, there are still two holes in the eye socket through which the implant can be seen bulging. The holes have enlarged and secretions from the infected eye constantly drain upon the plaintiff's face. The injury was attended with prolonged and intense pain. Like others who have suffered the loss of an eye, the plaintiff has incurred an anxiety state which affects his personality and effectiveness in social and business relationships. Pain, discomfort and the danger from infection continue and the testimony of the doctors was discouraging as to any prospects of improvement.'
 
 
 22
 "`2. The plaintiff was engaged in an occupation which required full vision in order to make the required keen inspections of salvaged materials under conditions of difficult visibility. Loss of all vision on one side and the consequent loss of depth perception render the performance of his duties dangerous to himself and others to more than the average extent. His duties took him into coal mines, upon tipples and other high places and over unimproved terrain. The handicap resulting from the accident very largely incapacitated the plaintiff for the performance of those duties.'
 
 
 23
 "`3. The nature of the plaintiff's duties and the theatre of operation in which they are to be performed are such as to involve an exceptional danger to his remaining eye. At the premises where he works there is extensive use of welding machines, burning torches, steam cleaning of dirty equipment and similar activities likely to cause a high incidence of eye injuries. However, he can still do his office work and continue to go in the yard to supervise and to show things to customers.'"
 
 
 24
 The evidence shows that when the eye was removed the wound did not heal. Drainage and infection appeared. A second and then a third operation proved unsuccessful and the two holes which developed in the eye socket still remain. They have enlarged, and secretions from the infected eye constantly drain upon plaintiff's face, making it necessary for him to wipe mucous from his eye or cheek at least every hour. When plaintiff and his wife are out in a social group, they have signals whereby his wife lets him know when to wipe his eye. He must remove his plastic eye, clean it, and clean the inside of his eye normally twice a day. At night he takes it out completely and puts a bandage over his eye. In the morning when he gets up he must take warm compresses, or bath cloths soaked in water and put them on his eye to open it since the eye is matted together from the discharge of mucous. Medical testimony indicates that this condition is permanent.
 
 
 25
 Since a jury was waived, it was the duty and responsibility of the Court to assess as damages an amount which the Court believed to be fair and reasonable compensation for plaintiff's loss and damages proximately resulting from this accident. Under this evidence we can not say that the amount assessed was clearly erroneous or excessive. We affirm the judgment.
 
 
 26
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The gyro-horizon indicator is an instrument used in an aircraft to serve as an artifical horizon, being a substitute for the actual horizon when the pilot cannot see the natural horizon