**Ezra H. BARNES, Jr.**

v.

**LITTON INDUSTRIAL PRODUCTS.**

**Civ. A. No. CA 75–0466–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

March 2, 1976.

F. Guthrie Gordon, III, Charlottesville, Va., for plaintiff.

Nathan H. Smith, Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

In this action plaintiff, Ezra H. Barnes, Jr., seeks compensatory and punitive damages from defendant Litton Industrial Products, Inc. for injuries sustained from plaintiff's consumption of a product called "burning alcohol" distributed and sold by defendant through its subsidiary Litton Dental Products. Unaware of its toxic nature, plaintiff consumed a substantial amount of this product and thereby injured his optical system rendering him blind. The gravamen of this action is that his blindness was a proximate result of defendant's breach of its duty adequately to warn users of this product of its poisonous nature when consumed.

Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, this being a matter in controversy which exceeds the sum or value of $10,000 exclusive of interests and costs between plaintiff, a resident of Virginia, and defendant a corporation doing business in Virginia, but incorporated and with its principal place of business in California.

This matter is now before the Court on defendant Litton's motion for summary judgment filed 16 January 1976 with supporting affidavits. Plaintiff having filed his brief in response and defendant having filed its rebuttal thereto, the motion for summary judgment is now ripe for disposition on the present state of the pleadings.

The uncontradicted facts pertinent herein are as follows: On or about 22 April 1974 plaintiff Barnes and two other inmates of the Virginia State Penitentiary consumed a product called "burning alcohol" which is predominantly methanol, generally known as wood alcohol. All of these individuals have suffered total or near total blindness from atrophy of the optic nerves caused by their ingestion of this product.

This product was manufactured, packaged and, labeled for Litton Dental Products, Inc., by Suttan Chemists, Inc., of New Jersey. It is 100% pure methanol. The container is an opaque plastic quart sized bottle with the following label:

*Burning Alcohol* for use in the alcohol torch—add to flame instruments before use.

For professional use only.

*Caution*: Federal Law prohibits dispensing without a prescription. Keep away from open flames and heat.

Sultan sold a substantial amount of this product to Litton Dental Products, Inc., which in turn distributed 18 quarts to its Richmond branch office. The State Penitentiary purchased its supply from the Richmond branch of Litton Dental.

Litton Dental can be characterized, justifiably, as a wholesale distributor of dental products. Sales to nonprofessional people at the Richmond branch are 0.1% of its gross sales amounting to approximately $500. Its general policy as understood by the managerial staff at Richmond, although no specific instructions are given to employees, is to sell only to dentists or professional dental laboratories. Sales of nondangerous

products such as dental floss are occasionally made to nonprofessionals who profess to be patients of dentists whose authorization they have to purchase the item. The understood policy is that this fact should be verified with the dentist or a signed purchase order presented, though not all of the employees at Richmond always make it a practice so to do. It is further understood that any sale of burning alcohol under these circumstances would be improper.

On 11 July 1974 one James A. Eichner, Esquire, not a dental professional, approached a female clerk at the Richmond branch and informed her that he wished to purchase a bottle of burning alcohol. He also stated that his dentist had given him permission to charge it to the dentist's account. Before the name of the dentist was requested, Mr. Eichner volunteered this information and the data was noted on the sales slip. On 31 July 1974 one Rebekah Winn approached a female sales clerk at the Richmond branch and asked for a bottle of burning alcohol to use for her spring cleaning. When she offered cash the clerk responded "I thought you were going to charge this to a doctor." When asked whether that was necessary the clerk said "no." On 24 November 1975 one Lea Ayers went to the same branch and asked a male clerk for a bottle of burning alcohol. He responded that such items could only be sold to dentists and dental laboratories or individuals presenting a purchase order from a dentist.

Plaintiff Barnes, who was serving a 25 year sentence, worked as a dental assistant at the dental laboratory of the State Penal Farm in Goochland County, Virginia. The burning alcohol which was consumed by Barnes and the others was used in the dental lab to fuel bunson burners used for melting wax to form wax bits and wax rims. The stock of bottles of this product was kept under lock and key so as to be inaccessible to the dental assistants and the general inmate population. When needed in the dental lab, dental assistants on their own authority could procure a bottle from this stock through the guard on duty. Dental assistants had unsupervised access to the lab wherein the bottle then in use was kept.

The particular bottles of burning alcohol consumed by Barnes and others were secured by Robert S. Whitley, one of the alcohol poisoning victims, who also worked as a dental assistant. Whitley had worked in this capacity for about 16 months prior to the incident. When he had started on the job he was told by Robert Mann, another dental assistant who had started prior to Whitley, that the burning alcohol was to be used only for fueling the lab torch, that it was not to be used for sterilizing instruments, and that a different type of alcohol was to be used for that purpose.

The event that apparently convinced Barnes and the others that the poisonous alcohol was consumable was a conversation they had with Dr. David Alexander, one of the two part time dentists who worked at the Farm. On the morning of the incident, in an idle conversation, Dr. Alexander explained to Barnes and Whitley how, back in his army days, he used to test certain alcohol products to determine whether they were fit for human consumption. Dr. Alexander said, in effect, that poisonous alcohol burns yellow and drinkable alcohol burns a clear blue. He demonstrated by burning two alcohol products handy in the lab— one was the Litton product labeled "burning alcohol" which burned with a clear blue flame. The Doctor then said words to the effect that the demonstration showed that this particular type of alcohol was consumable.

Whitley recalls having been warned by Mann that the product was not drinkable, but Barnes does not recall any such forewarning. Both Barnes and Whitley were familiar with the product label which does not contain an explicit warning as to its toxic nature when ingested.

On the day of the demonstration, after Dr. Alexander had left, Whitley smuggled the remainder of the burning alco-

hol out of the lab and he and Barnes consumed it. When it was all gone Whitley got a guard to procure another bottle for him on the pretext that he needed it for lab use. After remaining in the lab awhile to allay suspicion, he smuggled the second bottle out. Again, he shared it with Barnes and with a third inmate who joined their party. The second bottle was completely consumed by the three persons. The result—blindness befell each of them.

The burning alcohol in stock at the lab was apparently ordered by Dr. Bernard Hurowitz who was the other part time dentist working at the Farm. Dr. Hurowitz works there on a salary basis for a half day twice a week and has been doing the same for the past thirty years. He is responsible for keeping supplies current and signs the purchase orders therefor. At some point in time prior to the incident, when the burning alcohol first had been delivered to the lab, Dr. Hurowitz telephoned Litton Dental Products in Richmond to inquire as to whether the product was poisonous or harmful. He was answered by a representative at Litton to the effect that it was methanol and not fit for human consumption. Dr. Hurowitz relayed this message to Edward Gurnus, an inmate dental assistant, who was present when the call was placed. Dr. Hurowitz further recalls being questioned from time to time by inmate assistants about the burning alcohol and warning them not to drink it. After the incident Dr. Hurowitz talked to Robert Mann about it. Mann, says Hurowitz, stated to him something like "he had told them not to drink it." Dr. Hurowitz also talked about the incident with Gurnus. The Doctor says Gurnus told him that "different ones had approached him about this alcohol and he had said not to drink it." But Gurnus didn't mention the names of those to whom he gave warning.

With the pertinent facts before us, the Court can now undertake to review the legal issues raised by the motion for summary judgment. In a general sense plaintiff Barnes' complaint alleges a classic case of negligence: defendant Litton had a duty to provide an adequate warning to those who might foreseeably ingest its product, burning alcohol, that it was a highly dangerous poison, not to be consumed; defendant negligently failed to provide such a warning; this failure proximately contributed to cause plaintiff to ingest this product; as a result plaintiff suffered severe damages including blindness. More specifically, plaintiff relies on his allegation that defendant violated the Federal Hazardous Substances Act, 15 U.S.C. § 1261 *et seq.,* and the Virginia Hazardous Household Substances Act, Va.Code Ann. § 3.1–250, *et seq.* (Repl. Vol. 1973) as evidence of negligence. Since the language of these two statutes is virtually identical and argument concerning their applicability would be the same for each, we will deal with them together.

Defendant, in its motion for summary judgment, alleges that its product, burning alcohol, is not governed by the foregoing Acts and that plaintiff cannot rely on a violation thereof to establish his right to relief. Further, defendant claims that plaintiff used this product in a manner which defendant could not reasonably have foreseen as a matter of law. Notwithstanding the above, defendant asserts that its duty to warn, if any, was discharged because it gave its vendee, the Virginia State Farm, the institution in which this incident occurred, through Dr. Hurowitz, actual notice of the content and dangerous nature of burning alcohol.

The first important query is whether the Virginia Act and the corresponding Federal Act govern this product. If these Acts are determined to be applicable—which is to say, if they are interpreted as designed to protect the class of persons in which plaintiff is included against the risk of the type of harm which has in fact occurred as a result of its violation—the violation would be conclusive on the issue of negligence and the only questions remaining open would be jury questions such as causation in fact and the defenses of contributory

negligence and assumption of risk. The motion for summary judgment would necessarily be denied.

There are two subsidiary issues that must be answered in order to answer the larger issue of applicability of these Acts insofar as establishing negligence *per se*: (1) is this product subject to the provisions of these Acts; and (2) is plaintiff indeed a member of the protected class?

There is no dispute over the fact that if the product is subject to the provisions of these Acts defendant has violated them by failing to label the product in accordance with the requirements thereof. 15 U.S.C. § 1261(p); Va.Code Ann. § 3.1–250(g) (Repl. Vol. 1973).

To ascertain whether the product is governed by these Acts requires analysis of certain material provisions and regulations adopted pursuant thereto. Counsel agree that burning alcohol is a hazardous substance as defined by these Acts:

. . . Any substance or mixture of substances which (1) is toxic . . . if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use including reasonably foreseeable ingestion by children. 15 U.S.C. § 1261(f) 1.A; Va.Code Ann. § 3.1–250(g) 1.A. (Repl. Vol. 1973).

However, only "*misbranded* hazardous substances" are subject to the labeling provisions of these Acts:

'*Misbranded hazardous substance*' means a hazardous substance . . . intended, or packaged in a form suitable, for use in the household or by children . . . . 15 U.S.C. § 1261; Va.Code Ann. § 3.1–250(q) (Repl. Vol. 1973).

Clearly the burning alcohol was not intended for use in the home or by children. Without further explication, however, it would appear to fall within this definition in that an opaque plastic quart size bottle is a form of package suitable for use in the household or by children.

But the Regulations adopted by the Virginia Department of Agriculture and Commerce puts a gloss on this definition which qualifies its literal meaning:

(c) Containers. "Container intended or suitable for household use" means any carton, bottle, can, bag, tube, or any other container which under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around any related building or shed, including but not limited to a garage, carport, barn, or storage shed. The term includes containers of such articles as polishes or cleaners designed primarily for professional use, but available in retail stores such as hobby shops for nonprofessional use. Also included are such items as antifreeze and radiator cleaners that, although principally for car use, may be stored in or around dwelling places. The term does not include industrial supplies that might be taken into a home by a serviceman. An article labeled as and marketed solely for industrial use does not become subject to this law because of the possibility that an industrial worker may misappropriate a supply for his own use. Size is not the only index of whether the container is "suitable for household use." The test shall be whether under any reasonably foreseeable condition of purchase, storage, or use the container may be found in or around a dwelling. Rules and Regulations for the Enforcement of the Virginia Hazardous Household Substances Law, Virginia Department of Agriculture and Commerce, § 1(c).

In short, the test is whether under any reasonably foreseeable condition of purchase, storage or use the container may be found in and around a dwelling. The question of foreseeability, vague as it is, usually is left to the prerogative of the jury. Yet this issue may and should be decided as a matter of law where reasonable men could not differ on the outcome. Defendants' brief suggests that

the Regulations implicitly indicate that the law does not embrace articles sold on a wholesale basis for professional use only. Regulation 1(e) expressly includes articles designed for professional use but available on a *retail* basis for nonprofessional use. Regulation 1(e) further provides that an article labeled and sold for industrial use does not become subject to the law because an industrial worker might possibly misappropriate a supply for his own use. Plainly the concern of the law is with dangerous products obtainable through ordinary course household consumer purchases.

Hence there is no rational reason to differentiate products intended exclusively for industrial use from products intended exclusively for professional use. In fact, the examples, "polishes or cleaners," cited as professional products indicate that the intended meaning of the phrase "professional" products in this context is not "professional" in the technical sense of doctors and dentists, but in the colloquial sense as referring to "commercial" or "industrial" products.

Thus, the Regulations buttress this Court's conclusion that the law was intended, and embraces those products only as is necessary, to protect households. It was not intended to protect persons who presumably didn't need protection—for example, lab technicians.

Litton established and enforced a reasonable means of keeping burning alcohol out of the household consumer trade. Proof that it was not 100% effective does not vitiate the general effectiveness of the means. The product was manufactured for use by professionals and was marketed on a wholesale basis for sale to professionals. In fact, at defendants' Richmond branch, where the burning alcohol of concern herein was purchased, 99.9% of all sales in the past fiscal year were made exclusively to professionals or professional institutions.

To reiterate, the test of whether a product is subject to the law in question is basically *reasonable* foreseeability of household use. The Regulations cited herein have been shown to put a gloss on the term "foreseeability." Those products that by virtue of their customary methods of distribution, customary types of purchaser and customary use, are not within the contemplation of the Acts, cannot, as a matter of law, be determined accessible for household use under any "reasonably foreseeable condition."

Accordingly, those products cannot be subjected to the Acts. Though the product herein does not fall within the express categories thus exempted by the Regulations it falls within the scope of the purpose for which these categories were exempted. Therefore we find that this product is not subject to the provisions of the Acts in question in that as a matter of law defendant could not have reasonably foreseen it to be accessible for household use. The Court acknowledges that its finding is based in large extent on the above Regulations which apply only to the Virginia Act. But our research has failed to disclose comparable federal regulations, nor have counsel brought any such regulations to the Court's attention. In any event it is the logic expressed in the Virginia Regulations that concerns us and that applies equally in the explication of both the State and federal Acts.

The Court, having answered the first subsidiary issue in the negative need not dwell long on the second, that is, whether plaintiff is among the class sought to be protected by these Acts. Suffice it to say that even if defendant had sold burning alcohol to consumers in violation of these Acts it did not so sell this product in plaintiff's case. This sale was undoubtedly excluded from the intendment and reach of these Acts. Thus, the negligence *per se* presumption thereof does not protect this plaintiff. Extraneous negligence does not give rise to a cause of action. Indeed the industrial-use-wrongful-appropriation-by-worker exception enunciated in the Regulations precisely fits the professional-use-wrongful-appropriation-by-technician situation herein.

The foregoing determination having precluded plaintiff from proceeding on a negligence *per se* basis, plaintiff is shouldered with the burden of independently establishing from the evidence both duty and breach thereof as well as causation and damages. Defendant contends that plaintiff fails on the first count as a matter of law.

In its broadest sense, the concept of "duty" in tort law requires one to take reasonable care to avoid acts or omissions which one can reasonably foresee will cause an unreasonable risk of harm. Prosser, Torts § 53 (4th Ed. 1971). As it relates here, plaintiff contends defendant reasonably could have foreseen that any product distributed to a penal institution for use therein would be potentially accessible to its inmates. Further, defendant could have reasonably foreseen that a bottle of clear liquid with the word "alcohol" on its label, and with no warning as to its toxicity, would tempt the likes of those behind bars, strapped for booze, to chance an opportunity for a high and take a nip. There being no question about the attendant grave risk of serious harm, defendant's duty, in accordance with the general formula, is thereby established, says plaintiff. Defendant insists that it had no duty to provide a warning as to the danger of ingesting burning alcohol, a product produced and distributed for professional use only, because this hazardous aspect of the product was peculiar to its use in a way which, as a matter of law, could not have been reasonably foreseen.

■ If we were to be guided by the above general formula for establishing duty, we would have to deny defendant's request for summary judgment and defer the issue to a jury. The query of whether certain harm-causing conduct is reasonably foreseeable is generally viewed by the courts as a factual question. The foregoing formula, however, has been chiseled and molded by the courts to meet the exigencies of certain recurring classes of cases wherein application of the general formula would not do justice. Significantly herein we have a products liability case involving a product intended for and distributed to a professional user. In similar cases many courts [1] have found that the general formula of reasonable foreseeability is not controlling. The Virginia Supreme Court has recently reaffirmed what this Court has found to be this State's long held view in such cases—a manufacturer of a product is not liable carte blanche for all reasonably foreseeable uses of its product. *Turner v. Manning, Maxwell & Moore,* 216 Va. 245, 217 S.E.2d 863 (Sept. 5, 1975). In Virginia, a manufacturer is not expected to ponder, nor is he responsible for, uses of its product outside the scope of its intended purpose. *Turner, supra,* at 252, 217 S.E.2d 868. Within the parameters of the intended purpose the "reasonably foreseeable" language provides the test for determining the factual question of whether a manufacturer should be liable for injury caused in the use of its product. But uses outside the scope of the intended purpose are deemed unforeseeable as a matter of law. *Turner, supra,* at 252, 217 S.E.2d 868. In brief, we may rule favorably on defendant's motion if we find that plaintiff's use of the product was beyond the scope of its intended purpose.

■ Before dealing with this issue in depth, we shall first examine the significance of the fact that the burning alcohol was intended for and distributed to professionals and professional institutions only. As a general rule, the duty to give warning of dangers inherent in a product is minimized where the user is a member of a particular trade or profession wherein those dangers are generally known. *Collins v. Ridge Tool Company,* 520 F.2d 591 (7th Cir. 1975); *Littlehale v. E. I. duPont de Nemours & Co.,* 380 F.2d 274 (2nd Cir. 1967); *Helene Curtis Industries, Inc. v. Pruitt,* 385 F.2d 841 (5th Cir. 1967); *Rivers v. Leitman et al.,* 317 F.2d 102 (4th Cir. 1963); *Sawyer v. Pine Oil Sales Co.,* 155 F.2d 855 (5th Cir. 1946); *Lockett v. General Electric Co.,*

**1.** *See* note 3, *supra.*

376 F.Supp. 1201 (E.D.Pa.1974). However a reading of the above cases shows that the general rule has full force and effect only where the user of the product is expert in its use by virtue of his trade or profession and is aware of the danger inherent in its ordinarily expected, though perhaps improper, use.

■ Although the Court deems it appropriate to take the environment in which this product was used into consideration, we do not find that this case is on all fours with the cited cases and thus we cannot summarily dispose of the duty to warn issue thereon. In this case there is evidence that this product was distributed by a dental products wholesaler, but there was no evidence that it is generally used in the profession, nor that dentists or dental assistants who do use it are aware that it is composed of methanol—a poisonous substance. Dr. Hurowitz, a dentist for over 35 years found it necessary to contact defendant to find out about the nature of this product. Quite obviously, Dr. Alexander was unaware of its inherently dangerous nature. We conclude that the issue of duty to warn cannot be closed on the basis of professional use and must remain open on the question of foreseeability of the risk of harm in question.

■ As heretofore mentioned, Virginia law, and that of other jurisdictions puts a gloss on the word "foreseeability" in respect to products liability cases. Insofar as the production of goods is concerned, "the manufacturer is under a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended." *Turner v. Manning, Maxwell and Moore, Inc.,* 216 Va. 245, 217 S.E.2d 863, 868 (Sept. 5, 1975). In other words the scope of foreseeability with regard to the safety of products is limited, as a matter of law to risks arising out of their intended use. In this case there was no defect in the product itself. It was reasonably safe for its intended purpose—bunson burner fuel.

The related question herein, whether defendant had a duty to warn about danger inherent in an unintended use, is not as readily disposable. Virginia law, contends Plaintiff, does not give the word "foreseeability" as narrow a reading in this regard as it does in relation to the design of the product itself.

With respect to the meaning of foreseeability in this context plaintiff chiefly relies on *Spruil v. Boyle-Midway, Inc.,* 308 F.2d 79 (4th Cir. 1962), a diversity case arising in Virginia. In that case the Court found the evidence supported a finding that death of a 14-month-old infant who suffered chemical pneumonia as a result of ingestion of a small quantity of inherently dangerous furniture polish was concurrently caused by the negligence of the manufacturer, which gave insufficient warning of the danger, and the negligence of the mother, who placed the product in range of the child. In rendering its decision the Court, without citing authority, proffered the following statement as to the applicable law:

The defendants have contended throughout that they are liable only for injuries caused in the course of the intended use of their product. Since their product was not intended to be consumed, they say, there is no liability for death or injury resulting from consumption of it. We agree with the general principle but the application the defendants would have us make of it here is much too narrow. "Intended use" is but a convenient adaptation of the basic test of "reasonable foreseeability" framed to more specifically fit the factual situations out of which arise questions of a manufacturer's liability for negligence. "Intended use" is not an inflexible formula to be apodictically applied to every case. Normally a seller or manufacturer is entitled to anticipate that the product he deals in will be used only for the purposes for which it is manufactured and sold; thus he is expected to reasonably foresee only injuries arising in the course of such use.

However, he must also be expected to anticipate the environment which is

normal for the use of his product and where, as here, that environment is the home, he must anticipate the reasonably foreseeable risks of the use of his product in such an environment. These are risks which are inherent in the proper use for which his product is manufactured. Thus where such a product is an inherently dangerous one, and its danger is not obvious to the average housewife from the appearance of the product itself, the manufacturer has an obligation to anticipate reasonably foreseeable risks and to warn of them, though such risks may be incidental to the actual use for which the product was intended.[2]

■ The only Virginia case cited by plaintiff that has a somewhat attenuated factual resemblance to the case herein is *McClanahan v. California Spray-Chemical Corp.,* 194 Va. 842, 75 S.E.2d 712 (1953). That case involved an action by apple orchard owners against a manufacturer of apple scab spores eradicant. On appeal, the Virginia Supreme Court found that defendant had a duty to warn of the danger to the orchard which would result from improper application of the eradicant. In response to defendant's contention that an adverse holding would mean defendant would have to provide warning against all hazards the Court stated that "defendant's duty to warn does not extend to circumstances and conditions which it could not have reasonably foreseen."

This Court is concerned that it is conceivable to reach a finding of liability herein from the language above read in the abstract. We nevertheless find, after scrutinizing the factual setting of this language and after reading numerous products liability cases that add flesh to like legal language,[3] that defendant herein, as a matter of law, had no duty to warn users of burning alcohol of its toxicity when ingested.

The question is—was it reasonably foreseeable that an adult inmate dental assistant, who knew that the product was used for fueling the lab torch and who knew its label stated "For Torch Use Only," still would be so tempted and misled by the words on the label "burning *alcohol*" so as to ingest the same for the purpose of getting high? Applying either *Spruil* or *McClanahan* the answer is no.

In *Spruil* it was reasonably foreseeable that furniture polish as it is ordinarily used in a household environment might find its way into a baby's mouth. In *McClanahan* it was reasonably foreseeable that an apple grower might ordinarily disregard directions as to the ambient temperature during which he might apply an apple spore eradicant to his apples absent warning of the harmful effects of such a mistake. Indeed these acts are incident to the normal and expected use of these products. Thus an improper, but reasonably foreseeable *manner* of use during an *anticipated* use brought about the harm in each of these cases.

It would be absurd to think that if the mother of the child in *Spruil,* attracted by the cherry color of the polish, took a swig, she would have a case. Or that if the apple grower, misled by the word "eradicant," ruined his new suit by trying to remove a stain with the product, would have a case. But these hypotheticals are analogous to this case in that the act which caused the harm is alien rather than incidental to the intended use of the product.

---

**2.** *Also see Spangler v. Kranco, Inc.,* 481 F.2d 373 (4th Cir. 1973); *Gardner v. Q. H. S., Inc.,* 448 F.2d 238 (4th Cir. 1971) which basically reiterate the principle of law applied in *Spruil,* but do not cite Virginia cases.

**3.** *See Collins v. Ridge Tool Company,* 520 F.2d 591 (7th Cir. 1975); *Turcotte v. Ford Motor Company,* 494 F.2d 173 (1st Cir. 1974); *Spangler v. Kranco, Inc.,* 481 F.2d 373 (4th Cir. 1973); *Gardner v. Q. H. S., Inc.,* 448 F.2d 298 (4th Cir. 1971); *Olgers v. Sika Chemical Corp.,* 437 F.2d 90 (4th Cir. 1971); *Rivers v. Leitman,* 317 F.2d 102 (4th Cir. 1963); *Littlehale v. E. I. duPont de Nemours & Co.,* 268 F.Supp. 791 (S.D.N.Y.1966); *Smith v. United States,* 155 F.Supp. 605 (E.D.Va.1957); *Turner v. Manning, Maxwell & Moore,* 217 S.E.2d 863 (Sept. 5, 1975).

Perhaps it's too easy to confuse the misuse depicted in the above hypotheticals and the misuse in this case, with normal or reasonably foreseeable misuse within the scope of the intended purpose, particularly in light of factual situations as in *Spruil* where the baby's misuse of the polish was assuredly alien to its intended use. The crucial distinction is that the act incidental to the normal use in *Spruil* was the mother's act of leaving the polish open and unguarded on a dresser near the baby's crib. The fact that the baby, far from the age of reason, would use the polish in a manner completely alien to its intended use was a reasonably foreseeable consequence of an act incidental to the normal use of the polish. In this case, and in the hypotheticals, the misuse, which was completely alien and totally outside the scope of the products' intended purpose, was perpetrated by those, not only aware of, but responsible for its proper use.

The burning alcohol was distributed for use in a dental laboratory wherein dentists and dental assistants worked. The fact that this facility was housed in a penal institution and that the dental assistants were prisoners does not negative defendant's right to assume that professional standards will be maintained, including proper instruction in the use of the instruments and supplies. Regardless of whether burning alcohol is used generally in the profession, its proper use was discernable from the label and was known to the dental assistants at this facility who were indeed responsible for its proper use. For these reasons the flagrant misuse of the burning alcohol by the dental assistants and the resultant harm therefrom was unforeseeable as a matter of law.

This conclusion is buttressed by the aforementioned recent holding of the Supreme Court of Virginia which, without citing either *Spruil* or *McClanahan,* alludes to a more narrow reading of the term "reasonably foreseeable," as it applies to the issue of duty to warn in products liability cases. *Turner v. Man-*

*ning, Maxwell and Moore, supra,* suggests that the consequences of a known misuse of a product by one responsible for its proper use, even if it is used for a proper purpose in an improper manner, are unforeseeable as a matter of law. Specifically on the issue of duty to warn, the Court in *Turner* cites with approval *Smith v. United States,* 155 F.Supp. 605, 609 (E.D.Va.1957) which further explicates thereon and in doing so mitigates the seemingly more expansive reading of this issue in *McClanahan:*

The duty to caution or warn of unusual hazards or dangers must only arise where there is a reasonable anticipation that the use of a product as instructed or directed will produce injury. Negligence based on the failure to warn requires actual or constructive knowledge of the danger on the part of the manufacturer, and the lack of a warning notice. *Orr v. Shell Oil Co.,* 352 Mo. 288, 177 S.W.2d 608; *McClanahan v. California Spray-Chemical Corp., supra.* The holding in McClanahan was predicated on the breach of the statutory duty imposed on the manufacturer to warn prospective users of dangers which conceivably are in the product. The court construed the Virginia statute as requiring the manufacturer to give both directions for use and a warning where necessary.

As already noted, no statute has been violated herein. The use of the product for its intended purpose as instructed or directed would not have produced the plaintiff's injuries. The duty to warn of the hazard in question, unforeseeable as a matter of law, did not arise.

The foregoing conclusion renders defendant's final defense, that it did provide an adequate warning as to the burning alcohol's poisonous composition, moot. However, the Court, mindful of the possibility of appeal, deems it appropriate to acknowledge that, if defendant had a duty to provide a warning as plaintiff contends, defendant discharged its duty by virtue of its representative's telephone conversation with Dr. Hurow-

**1364** ■■■■■■■■■

itz prior to plaintiff's injury. In that conversation, as above noted, the doctor was specifically warned about the danger in question.

Plaintiff says that the warning must not only be given to vendee but also "to employees and other persons who may be reasonably expected to come in contact with the product." Plaintiff's Brief, p. 5 cites as authority for this contention, *McClanahan v. California Spray-Chemical Corp., supra,* but this lengthy opinion contains no suggestion of support for this position.

■■ On the contrary we find the law to be that there is no duty to warn a purchaser's employees of dangers inherent in the product where the vendee either already knows about the danger or is made aware of it by the vendor. *Marker v. Universal Oil Products,* 250 F.2d 603, 609 (10th Cir. 1957); *Littlehale v. E. I. duPont de Nemours & Co., supra* at 799. *See also* Annot. 76 A.L.R.2d 23–27 (1961). Dr. Hurowitz, who was apparently responsible for the purchase of the burning alcohol and who supervised the dental assistants at the Farm, was aware of its toxic nature and made this information known to his dental assistants. Although it does not appear that Dr. Hurowitz personally pointed out to plaintiff the danger of drinking the burning alcohol this omission, if omission it be, cannot under the law be transmuted into a failure on the part of defendant to discharge its duty to provide an adequate warning.

For these and the foregoing reasons, defendant's motion for summary judgment is GRANTED.

An appropriate order shall issue.