685 A.2d 1365

CARRIE CANTY, AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOSEPH CANTY, CARRIE CANTY, INDIVID-UALLY, AND SAMUEL CANTY, PLAINTIFFS, v. EVER–LAST SUPPLY CO., HARVESTER CHEMICAL CO., INC. (A/K/A HAR-VESTER CHEMICALS INC.), CARY DORSI AND AKZO NOBEL COATING INC., DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided July 9, 1996.

70

*Marc S. Klein,* for plaintiffs (*Sills, Cummis, Zuckerman, Tisch-man, Epstein & Gross,* attorneys).

*Paul A. Spina,* for defendant, Harvester Chemical Co., Inc., (*Paul Seligman,* attorneys).

*Lee Henig–Elona,* for defendant, Akzo Nobel Coating Inc. (*Hannoch & Weisman,* attorneys).

*Stephen L. Hopkins,* for defendant, Ever–Last Supply Co., (*Braff, Harris & Sukonek,* attorneys).

*David L. Wikstrom,* for defendant, Cary Dorsi (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys).

JULIO M. FUENTES, J.S.C.

In August 1993, plaintiff Joseph Canty was killed and his son, Samuel, was severely injured when vapors from a lacquer floor sealant they had applied to a hardwood floor suddenly burst into flames. Plaintiffs commenced this wrongful death and personal injury action contending that the accident and plaintiffs' injuries were caused by defendants' failure to provide adequate warnings or instructions on the lacquer product.

The primary issue in this summary judgment motion is whether plaintiffs' defective warning claims are preempted by the Federal Hazardous Substances Act (FHSA), 15 *U.S.C.A.* §§ 1261–1278. Defendants assert that preemption applies and that because the label on the lacquer product fully complies with the applicable federal labeling statutes, plaintiffs' action must be dismissed. For the reasons that follow, I conclude that the FHSA preempts plaintiffs' defective warning claims and that defendants' Lacquer Seal product complies with the labeling requirements of the FHSA. An order granting summary judgment is entered accordingly.

## I

The relevant facts are summarized from the evidential materials presented. For over thirty years, Joseph Canty operated a hardwood floor refinishing business with his son, Samuel Canty. In early August 1993, the two were hired to refinish the hardwood floors in defendant Cary Dorsi's apartment building in Upper Montclair. To prepare for the job, Joseph Canty purchased several cans of Lacquer Seal from defendant Ever–Last Supply Co. (Ever–Last), a retail supplier of janitorial and maintenance supplies in Newark. On the date of the fire, the Cantys appeared at Dorsi's apartment building to refinish the floors in six separate apartment units. Prior to commencing, as part of their normal

routine, Samuel Canty read the warning label on one of the cans of Lacquer Seal to his father, who was illiterate. After the two had finished applying a coat of sealant in one of the apartments, the sealant's vapors, which had collected throughout the unit, ignited while the two were still inside. The resulting flash fire killed Joseph Canty and seriously injured Samuel. The fire erupted when either the compressor in the apartment's refrigerator switched on, creating a spark which ignited the vapors, or the vapors were ignited by a pilot light in the apartment's gas stove.

The lacquer used by the Cantys is a product manufactured by defendant Akzo Nobel Coatings (Akzo) for use with hardwood floors as a protective sealant. It is composed of a number of highly flammable chemicals, including toluene, isopropanol, and ethyl acetate. The product itself is particularly combustible. One of the primary dangers it presents is the possibility that during application its vapors will collect and suddenly ignite, resulting in the sort of flash fire that injured the plaintiffs in this case.

Akzo manufactures the Lacquer Seal in bulk and ships the product in tankloads to defendant Harvester Chemicals (Harvester). Harvester then repackages the Lacquer Seal into one and five gallon containers which it labels with precautionary language before distributing to the next level of suppliers. Defendant Ever–Last purchases its stock of Lacquer Seal from Harvester and offers the product to its customers, which include tradespeople and the general public alike.

The lettering on the face panel of the Lacquer Seal label is red on a white background and appears in varying degrees of height and boldness. In the center of the label appear the phrases "*DANGER* !" "EXTREMELY FLAMMABLE" and "VAPORS MAY CAUSE FLASH FIRE." Below these phrases is a sentence directing the user to read the can's other panels, which contain additional warnings: "VAPOR HARMFUL," "PREVENT BUILD–UP OF VAPORS," "VAPORS MAY IGNITE EXPLOSIVELY," and "VAPOR IS HEAVIER THAN AIR–VAPORS MAY TRAVEL TO OTHER THAN WORK AREA."

The back of the can contains two smaller labels, each with white lettering on a bright red background. The top label contains the phrases "DANGER!" "EXTREMELY FLAMMABLE," "VAPORS MAY CAUSE FLASH FIRE," and "VAPORS MAY TRAVEL TO OTHER THAN WORK AREA." The bottom label depicts the symbol of a flame and the phrase "FLAMMABLE LIQUID" written in bold typeface, three-eighths of an inch high, underneath the flame.

Plaintiffs' expert, Stephen Kuzma, submitted a report in which he claims that the warnings on the Lacquer Seal label were "poorly organized" and that the statements of principal hazard on the face panel do not appear in the same size or degree of boldness. Kuzma also found that the label did not provide adequate information about the flammable nature of Lacquer Seal vapors or the kinds of precautions that users should take concerning how to properly ventilate rooms before using the product. In Kuzma's opinion, the label on the Lacquer Seal can:

> presents a cluttered and jumbled array of warnings in a poorly organized fashion that is difficult to understand, obscures or renders some warnings and precautionary measures inconspicuous, provides misleading information and fails to define key terms clearly and effectively. As a result, this labeling inadequately warns consumers of the full extent of the dangers associated with lacquer seal and the extensive precautions necessary to protect themselves from these dangers.

A defense expert, E. Patrick McGuire, stated in his report that the label in question contains conspicuous warnings and detailed instructions in the appropriate type size. He concluded that "defendant met its obligation to warn the plaintiffs on the hazards associated with the ordinary and expected use of this product" and that the label is in compliance with the applicable federal statute.

Plaintiffs' primary contention is that defendants Akzo, Harvester, and Ever–Last are liable under the doctrine of strict product liability for failing to provide adequate warnings of the dangers or instructions on the safe use of the product. *See* New Jersey Products Liability Act, *N.J.S.A.* 2A:58C–1 to –11. Plaintiffs additionally claim that the defendants are liable in negligence for

failing to adequately warn and instruct plaintiffs of the dangers associated with the use of Lacquer Seal.

Defendant Akzo, joined by Harvester and Ever–Last, now moves for summary judgment, contending that (1) Lacquer Seal falls within a class of products subject to the labeling requirements of the FHSA; (2) the Lacquer Seal label complies with FHSA requirements; and (3) compliance with the federal statute preempts plaintiffs' state law damages action, whether it be based on statutory or common law.[1]

## II

The preliminary issue in this motion is whether the FHSA governs the lacquer product used by plaintiffs at the time of the fire. Only where the federal statute applies to a given product does preemption become an issue. The parties agree that Lacquer Seal is a "hazardous substance" as defined by § 1261(f) of the statute. However, only hazardous substances which are "intended, or packaged in a form suitable, for use in the household or by children" are subject to the labeling requirements of the Act. 15 *U.S.C.A.* § 1261(p). Hazardous substances intended for household use which fail to comply with the federal labeling requirements are deemed "misbranded," and the introduction of such an item into interstate commerce is prohibited. *See* 15 *U.S.C.A.* § 1263(a).

Plaintiffs contend, however, that Lacquer Seal is a professional product sold primarily to tradespeople and that it therefore is not a product intended for household use. According to plaintiffs, the controlling factor on this issue is the manufacturer's intended use of the product. They argue that products that are developed and marketed for use by professionals do not require the FHSA's protective measures which were designed in part to help prevent

---

[1] Defendant Akzo settled with plaintiffs pending the court's ruling on this motion and is no longer a party to this action. The claims against Dorsi have been dismissed on other grounds.

accidents involving children. *See Barnes v. Litton Indus. Prods.,* 409 *F.Supp.* 1353, 1361 (E.D.Va.1976), *aff'd in part, rev'd in part on other grounds,* 555 *F.*2d 1184 (4th Cir.1977). Plaintiffs further assert that by labeling the lacquer container "For Professional Use Only," the defendants intended the product for industrial application, not household use; thus, Lacquer Seal would not be covered by the FHSA. *See Christenson v. St. Mary's Hosp.,* 835 *F.Supp.* 498, 502 (D.Minn.1993) (cleaner designed for hospital use was not within scope of FHSA); *Barnes, supra,* 409 *F.Supp.* at 1363–64 (burning alcohol intended for use by dentists not household product regulated by FHSA).

■ The manufacturer or the distributor's intended use, however, is not the correct standard for determining whether a product is subject to the federal labeling statutes. The appropriate test is found at 16 *C.F.R.* § 1500.3(c)(10)(i), which defines the phrase "intended, or packaged in a form suitable, for use in the household" to include:

> any hazardous substance, whether or not packaged, that under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around any related building or shed including, but not limited to, a garage, carport, barn, or storage shed. The term includes articles, such as polishes or cleaners, designed primarily for professional use but which are available in retail stores, such as hobby shops, for nonprofessional use. Also included are items, such as antifreeze and radiator cleaners, that although principally for car use may be stored in or around dwelling places. The term does not include industrial supplies that might be taken into a home by a serviceman. An article labeled as, and marketed solely for, industrial use does not become subject to this act because of the possibility that an industrial worker may take a supply for his own use. Size of unit or container is not the only index of whether the article is suitable for use in or around the household; *the test shall be whether under any reasonably foreseeable condition of purchase, storage, or use the article may be found in or around a dwelling.*
> [16 *C.F.R.* § 1500.3(c)(10)(i) (emphasis added).]

Reading the section as a whole, the test is not what the manufacturer intends, but whether it is reasonably foreseeable to the manufacturer that the product will be available for household use. *See Barnes, supra,* 409 *F.Supp.* at 1359. Under the appropriate test, the focus is whether the product, through its normal distribution scheme, is made available to the ordinary consumer. The fact

that the defendants' product is labeled "For Professional Use Only," does not determine the issue. The important consideration is whether the product could be purchased by the average consumer for household use.

The cases cited by plaintiffs in support of their contention that the lacquer used by the Cantys was not a household product covered by the FHSA are inapposite. *See Christenson, supra,* 835 *F.Supp.* at 502; *Barnes, supra,* 409 *F.Supp.* at 1359.

In *Christenson,* a five-year-old was injured when she drank Liquiset, a specialized cleaner used to sanitize medical supplies. The court found Liquiset to be a professional product that was not covered by the FHSA because it was sold only to hospitals and because its highly specialized application made it unlikely that the product could be adapted to household use. In *Barnes,* an inmate at a state prison suffered personal injuries after consuming burning alcohol labeled "For Professional Dental Use Only." In holding that the FHSA did not apply, the court specifically noted that burning alcohol, which is used to fuel bunsen burners and melt wax, was not a product ordinarily found in the home and that the seller had taken careful steps to prevent sales of the alcohol to anyone but dentists and dental laboratories. *See Barnes, supra,* 409 *F.Supp.* at 1359. In both *Barnes* and *Christenson,* the plaintiffs' personal injury claims escaped FHSA preemption because the products involved had highly specialized industrial applications which limited their distribution to professional users and made their use by the average household consumer not reasonably foreseeable.

In this case, the evidence reveals that Ever–Last, one of the stores where Lacquer Seal is sold, is open to the general public as well as tradespeople. Any Ever–Last customer, whether a professional or not, may purchase Lacquer Seal for household use. Where, as here, there is no evidence to show that the manufacturer, wholesaler, or retailer of a hazardous substance sought to limit sales of the product to industrial or professional users, it is reasonably foreseeable that household consumers will

have access to the product. The lack of restrictions on who may purchase Lacquer Seal, along with its obvious utility to an average household consumer as a wood floor sealant make it a product "intended, or packaged in a form suitable, for use in the household" within the meaning of the regulations. Accordingly, Lacquer Seal is a product governed by FHSA.

## III

In their complaint, plaintiffs assert two separate theories of recovery, negligence and strict products liability. In regard to the negligence claim, plaintiffs assert that defendants "had a duty to properly design the [Lacquer Seal label] and to warn the plaintiffs of the dangers associated with the [use of the product]." Plaintiffs contend that defendants breached this duty of care by failing to provide "adequate warnings or instructions" and, as a proximate result of this breach, plaintiffs sustained severe injuries.

Plaintiffs' common law negligence claim must be dismissed because it is superseded by state legislation. With the enactment of the Product Liability Act, *N.J.S.A.* 2A:58C-1 to -11, effective July 22, 1987, virtually all common law tort claims in New Jersey were combined into a single theory of recovery. Passage of the Act signaled the intention of the Legislature to replace common law negligence theories in the product liability area with a statutorily defined cause of action. As the Appellate Division recently observed in *Tirrell v. Navistar Int'l, Inc.,* 248 *N.J.Super.* 390, 398–99, 591 *A.*2d 643 (App.Div.), *certif. denied,* 126 *N.J.* 390, 599 A.2d 166 (1991):

> [W]here the Product Liability Act conflicts with the common law, it governs [the] action. The Product Liability Act no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for "harm" (as defined in the Act) caused by a defective product.
>
> . . . .
>
> Since a product liability action encompasses "*any* claim or action brought by a claimant for harm caused by a product," *N.J.S.A.* 2A:58C-1, (emphasis added), and section 2 describes the sole method of proof, namely that recognized for strict

liability claims, it is clear that common-law actions for negligence or breach of warranties (except express warranties) are subsumed within the new statutory cause of action, if the claimant and harm also fall within the definitional limitations of section 1.

[*Ibid.*]

*See also Repola v. Morbark Indus., Inc.,* 934 *F.*2d 483, 488–89 (3d Cir.1991); *Ramos v. Silent Hoist & Crane Co.,* 256 *N.J.Super.* 467, 473, 607 *A.*2d 667 (App.Div.1992); *Koster v. Scotch Assocs.,* 273 *N.J.Super.* 102, 110 n. 1, 640 *A.*2d 1225 (Law Div.1993); William Dreier et al., *New Jersey Products Liability & Toxic Torts Law* 1–10 (1996). Thus, here, plaintiffs' common law negligence claims must be dismissed as being pled in violation of the Product Liability Act's single cause of action rule.

■ I now turn to whether plaintiffs' strict liability claim under the Products Liability Act is preempted by the FHSA. *See N.J.S.A.* 2A:58C–4. The basis for federal preemption of state law rests within the Supremacy Clause of the Constitution. *Dewey v. R.J. Reynolds Tobacco Co.,* 121 *N.J.* 69, 77, 577 *A.*2d 1239 (1990). The clause provides that federal law is the "supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *U.S. Const.,* art. VI, cl. 2. State law may be preempted by valid federal statutes or regulations, and this preemption applies equally to state common law and statutory law. *Feldman v. Lederle Lab.,* 125 *N.J.* 117, 134, 592 *A.*2d 1176 (1991), *cert. denied,* 505 *U.S.* 1219, 112 *S.Ct.* 3027, 120 *L.Ed.*2d 898 (1992).

■ Whether a federal statute preempts state law turns on the intent of Congress when it passed the law, and that intention may be either express or implied. *Cipollone v. Liggett Group, Inc.,* 505 *U.S.* 504, 516, 112 *S.Ct.* 2608, 2617, 120 *L.Ed.*2d 407, 422–23 (1992). As stated by the Supreme Court, " '[t]he purpose of Congress is the ultimate touchstone' of pre-emptive analysis." *Ibid.* (quoting *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn,* 375 *U.S.* 96, 103, 84 *S.Ct.* 219, 223, 11 *L.Ed.*2d 179, 184 (1963)). There must be a clear showing of Congressional intent to supersede state authority, because there is a strong presumption against preemption.

*See id.* at 523, 112 *S.Ct.* at 2621. In this case, because plaintiffs' claims "concern rights and remedies traditionally defined solely by state law, namely, tort compensation," defendant must clearly establish that Congress intended to preempt this area of tort law. *Feldman, supra,* 125 *N.J.* at 137, 592 *A.*2d 1176.

In *Moss v. Parks Corp.,* 985 *F.*2d 736, 739 (4th Cir.), *cert. denied,* 509 *U.S.* 906, 113 *S.Ct.* 2999, 125 *L.Ed.*2d 693 (1993), the Fourth Circuit examined Congress' intent in passing the FHSA and set forth the relevant history of the statute's limited preemption provision:

> The FHSA was enacted in 1960. The purpose of the law was to "provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." As enacted, the FHSA did not contain a preemption section. However, when the Act was amended in 1966, the legislative history discussed the impracticality of having the states produce potentially fifty different labels for a particular hazardous substance. Congress recommended "a limited preemption amendment which would encourage and permit states to adopt requirements identical with the federal requirements for substances subject to the Federal Act, and to enforce them to complement Federal enforcement."
>
> *[Ibid.* (citations omitted).]

■ In enacting the preemption provision, Congress was clearly concerned about the possibility that different labeling standards would be adopted by the States, creating multiple requirements for the same hazardous product. As noted by the Ninth Circuit:

> On the one hand, a national safety standard would ease the burden of compliance for chemical product manufacturers by relieving them from the burden of complying with fifty-one separate regulatory schemes promulgated by each state and the federal government. On the other had, such a standard would take police powers away from the states who best know how to serve the interests of their citizenry. The preemption clause in FHSA balances these competing concerns by leaving cautionary labeling requirements to the federal government while allowing states to regulate the sale and use of hazardous chemicals.
>
> *[Chemical Specialties Mfrs. Ass'n v. Allenby,* 958 *F.*2d 941, 950 (9th Cir.), *cert. denied,* 506 *U.S.* 825, 113 *S.Ct.* 80, 121 *L.Ed.*2d 44 (1992).]

The preemption provision that was added under the 1966 Amendments provides that:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under [the FHSA] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State

may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [the FHSA].

[15 *U.S.C.A.* § 1261, Historical Note, Effect upon Federal and State Law.]

The history and purpose of the limited preemption provision make clear that Congress intended to preempt all state laws which establish cautionary labeling requirements different from those established by the FHSA. *Moss, supra,* 985 *F.*2d at 739; *Lee v. Boyle–Midway Household Prods., Inc.,* 792 *F.Supp.* 1001, 1007 (W.D.Pa.1992).

The more precise issue now is whether plaintiffs' strict liability claim constitutes a state law "labeling requirement" subject to preemption by the federal statute. Plaintiffs cite two cases in support of the proposition that the federal labeling statutes do not preempt their state law claims. *See Feldman, supra,* 125 *N.J.* at 155–56, 592 *A.*2d 1176 (Federal Food, Drug, and Cosmetic Act did not preempt strict liability claim against manufacturer for failure to warn that Declomycin, an antibiotic, could cause tooth discoloration); *Dewey, supra,* 121 *N.J.* at 69, 577 *A.*2d 1239 (Federal Cigarette Labeling and Advertising Act did not preempt product liability claim for failure to warn of hazardous nature of tobacco product).

The issue of whether the FHSA preempts state law tort actions has been addressed by a number of federal courts. In considering the extent of FHSA preemption in *Moss, supra,* 985 *F.*2d at 736, the Fourth Circuit noted a previous decision where it had stated that:

[if] federal law mandates a specific label and permits nothing additional or different, it can hardly be urged that a state tort duty based on a warning requirement that is more elaborate and different does not conflict. The manufacturer in that case cannot comply with both.

[*Worm v. American Cyanamid Co.,* 970 *F.*2d 1301, 1307 (4th Cir.1992).]

As another Federal Court observed:

[a] jury verdict or Court decision ruling that compliance with the labeling requirements of the FHSA does not provide sufficient warning under state law would frustrate the congressional purpose of providing nationally uniform requirements.

[*Lee, supra,* 792 *F.Supp.* at 1008.]

In *Cipollone, supra,* the United States Supreme Court considered the preemption of state law tort actions under a provision of the Federal Cigarette Labeling and Advertising Act of 1965 which also prohibited certain inconsistent state law Labeling requirements. In a plurality opinion, the Court held that for purposes of preemption, the distinction between a statutory labeling standard and a failure to warn negligence claim is illusory. The Court then concluded that petitioner's failure to warn tort claim was a labeling "requirement" and thus was preempted to the extent that the claim required additional or more clearly stated warnings than the federal statute.

In reaching its decision, the *Cipollone* Court noted *Dewey, supra,* where the New Jersey Supreme Court had previously distinguished state law damage claims from "labeling requirements" on the basis of damage claims providing an incentive only to change labels, but not compelling compliance by a manufacturer. *See Cipollone,* 505 *U.S.* at 509 n. 3, 112 *S.Ct.* at 2613 n. 3; *Dewey, supra,* 121 *N.J.* at 90–91, 577 *A.*2d 1239. However, as the *Cipollone* Court stated, "[I]t is the essence of the common law to enforce duties that are either affirmative *requirements* or negative *prohibitions.*" *Cipollone, supra,* 505 *U.S.* at 522, 112 *S.Ct.* at 2620. Given the clear import of the *Cipollone* decision, most distinctions "between State statutes and regulations on the one hand and State damage actions on the other for purposes of [federal] preemption" no longer seem relevant. *Macrie v. SDS Biotech Corp.,* 267 *N.J.Super.* 34, 46–47 n. 4, 630 *A.*2d 805 (App.Div.), *certif. denied,* 134 *N.J.* 565, 636 *A.*2d 522 (1993).

Plaintiffs' contention, based on *Dewey* and *Feldman,* that failure to warn tort actions are not preemptable because they are not a "labeling requirement", is not in accord with the great weight of state and federal authority. *See Cipollone, supra,* 505 *U.S.* at 517–24, 112 *S.Ct.* at 2618–22; *Moss, supra,* 985 *F.*2d at 739–40; *Lee, supra,* 792 *F.Supp.* at 1006–08; *Salazar v. Whink Prods. Co.,* 881 *P.*2d 431, 433–34 (Colo.App.1994), *cert. denied, —— U.S. ——,*

115 *S.Ct.* 1315, 131 *L.Ed.*2d 196 (1995); *Busch v. Graphic Color Corp.,* 169 *Ill.*2d 325, 214 *Ill.Dec.* 831, 842, 662 *N.E.*2d 397, 408, *cert. denied,* —— U.S. ——, 117 *S.Ct.* 55, 136 *L.Ed.*2d 18 (1996); *Wallace v. Parks Corp.,* 212 *A.D.*2d 132, 629 *N.Y.S.*2d 570, 576 (1995); *State ex rel. Jones Chemicals, Inc. v. Seier,* 871 *S.W.*2d 611, 613 (Mo.App.1994).

As was the case in *Cipollone,* the FHSA's prohibition against state law labeling requirements applies only to the extent that those requirements are not identical to the federal statute. The New Jersey Product Liability Act does not impose specific labeling requirements. Rather, it requires labels which "a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicate[ ] adequate information on the dangers and safe use of the product." *N.J.S.A.* 2A:58C–4. Thus, whether a claim under the Product Liability Act is preempted because the "labeling requirement" it seeks to impose is not "identical" to the FHSA turns on the specific claims of each action. *See Cipollone, supra,* 505 *U.S.* at 523–24, 112 *S.Ct.* at 2621–22. Where a plaintiff's claim seeks to hold a manufacturer responsible for failing to provide warning labels which are not identical to those required under the FHSA, that claim is preempted. *See, e.g., Moss, supra,* 985 *F.*2d at 740. Where a plaintiff's claim does not seek more elaborate labeling requirements, but rather is based upon an alleged failure to comply with the FHSA, such a claim would not impose a "labeling requirement" and would not be preempted. In this case, plaintiffs' tort claim under the Product Liability Act is preempted because it seeks warnings and instructions that are more elaborate or more extensive than those required under the FHSA.

Federal courts are divided over whether a failure to warn claim may be brought for non-compliance with the FHSA's labeling requirements. Courts that have considered this issue in the context of the FHSA have found that because the limited preemption provision only bars state claims that seek to impose labeling requirements which are different from the federal regulations,

claims based on a violation of the federal standards should be permitted. *Moss, supra,* 985 *F.*2d at 740–41; *see also Worm, supra,* 970 *F.*2d at 1308 (discussing the validity of such a claim under FIFRA); *DeHaan v. Whink Prods. Co.,* 1994 WL 24322 (N.D.Ill. Jan. 26, 1994); *Wallace, supra,* 629 *N.Y.S.*2d at 576; *Jenkins v. James B. Day & Co.,* 69 *Ohio St.*3d 541, 634 *N.E.*2d 998, 1003 (1994).

Other courts interpreting analogous preemption provisions have ˙rejected the existence of such a cause of action. *Miller v. E.I. Du Pont de Nemours & Co.,* 880 *F.Supp.* 474 (S.D.Miss.1994) (interpreting FIFRA); *Rodriguez v. American Cyanamid Co.,* 858 *F.Supp.* 127, 129–31 (D.Ariz.1994) (construing FIFRA); *Christenson, supra,* 835 *F.Supp.* at 501 (interpreting FHSA).

The weight of authority compels me to conclude that in this case, a failure to warn claim may be brought for non-compliance with the FHSA's labeling provisions. In *Wallace, supra,* plaintiff was injured in a fire when a camping stove fuel tank exploded while being refilled. Defendants moved to dismiss plaintiffs' mislabeling and failure to warn claims arguing that the claims were preempted by the FHSA. Plaintiffs, in turn, moved to amend the complaint to allege that the fuel container was "misbranded" under the FHSA. The New York Appellate Court set forth a persuasive and convincing rationale for bringing a suit under state law based upon a violation of the FHSA:

> In light of the intention of Congress to preempt State actions only to the limited extent that they impose additional or different labeling requirements than those imposed under Federal law, there would appear to be no constitutional or policy reason to preclude a State action in negligence that is based upon a violation of the Federal labeling standards.

> [629 *N.Y.S.*2d at 576.]

Similarly, in *Moss, supra,* the Fourth Circuit held that:

> [S]o long as a plaintiff charges a manufacturer with violations of FHSA-mandated labeling requirements and does not seek more stringent labeling requirements, the Plaintiff's common law tort action for damages is not preempted.

> [*Moss, supra,* 985 *F.*2d at 740–41.]

The ability to maintain a cause of action based on the failure to comply with the FHSA is reasonable; otherwise, there would be no redress for harm caused by inadequately labeled products regulated by the federal statute.

In this case, plaintiffs did not specifically plead a violation of the FHSA in their Fourth Amended Complaint. However, the question of defendants' compliance with the Act's labeling requirements was argued at great length by both parties in their submissions to the court. Furthermore, both parties' experts submitted affidavits which addressed the issue of whether defendants' label complied with the FHSA standards. Here, the complaint, together with the expert reports and the parties' submissions are sufficient to state a valid claim for failure to comply with the federal statute. *See Jenkins, supra,* 634 *N.E.*2d at 1004–05 (noting that expert's affidavit alleging that label failed to comply with FHSA stated valid claim based on violation of the Act).

## IV

Against this setting, the issue is whether the warning labels on defendants' Lacquer Seal product complied with the labeling requirements of the FHSA. The requirements are contained within the statute and its regulations, which provide a loose framework of instructions applicable to all products that are "hazardous substances" within the meaning of FHSA. *See generally* 15 *U.S.C.A.* § 1261(p)(1) (phrasing similar at 16 *C.F.R.* § 1500.3(b)(14)). Unlike other types of labeling statutes, the FHSA and its regulations do not dictate the specific warning language which must be contained in the warning labels. Instead, the statute and its regulations provide that a hazardous substance will be considered "misbranded" (and therefore noncompliant) when its label fails to include certain basic information about the product, its contents, and its proper use. *See generally* 15 *U.S.C.A.* § 1261(p)(1) (phrasing similar at 16 *C.F.R.* § 1500.3(b)(14)).

The statute provides, in pertinent part, that warning labels must include:

"(A) the name and place of business of the manufacturer, packer, distributor or seller;

(B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires the use of a recognized generic name;

(C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic;

(D) the signal word "WARNING" or "CAUTION" on all other hazardous substances;

(E) an affirmative statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar wording descriptive of the hazard;

(F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 1262 of this title...."

[15 *U.S.C.A.* § 1261(p)(1) (phrasing similar at 16 *C.F.R.* § 1500.3(b)(14)(i)).]

In addition, the regulations also set forth requirements regarding the placement and conspicuousness of the warning labels. *See generally* 15 *U.S.C.A.* § 1261(p)(2) (phrasing similar at 16 *C.F.R.* § 1500.3(b)(14)(ii)); 16 *C.F.R.* § 1500.121.

Plaintiffs' expert states in his affidavit that the Lacquer Seal warning label fails to meet the requirements of 15 *U.S.C.A.* § 1261(p)(1)(E) and (F), in a number of ways:

(1) There is no information about the danger of Lacquer Seal vapors on the front panel of the package. The statements "[v]apor is heavier than air" and "[v]apor may travel to other than work area" which are contained on the side panel label do not warn users that the vapors can travel to distant ignition sources and then flash back to the work area.

(2) The face panel suggests that the only danger associated with the Lacquer Seal vapors is a health hazard. The precautionary instruction "[u]se with adequate ventilation" appears in a box containing information about the danger of concentrating and inhaling Lacquer Seal fumes.

(3) The precautionary instruction "[u]se with adequate ventilation" is insufficient. The instruction should direct users to employ floor level ventilation, which would be more effective in dispersing vapors and decreasing the possibility of a flash fire.

(4) The label insufficiently defines "adequate ventilation" as the "positive movement of air and fresh air supplied through open windows and doors." The

definition should instead read "positive movement of air by spark-proof mechanically assisted means and fresh air through open windows and doors."

In addition to the substantive violations, plaintiffs' affidavit also states that the defendants' label fails to meet many of the requirements for language placement and prominence contained at 16 *C.F.R.* § 1500.121–.135.

Plaintiffs contend that the issue of compliance with the FHSA is a question of fact, which is properly resolved by only a jury. They further maintain that, because the parties have submitted opposing expert reports which dispute whether the label complies with the FHSA, there is a factual dispute which precludes summary judgment. *See Jenkins, supra,* 634 *N.E.*2d at 1004–05 (summary judgment for defendants precluded where issue of fact existed as to whether paint stripper product label complied with FHSA).

Defendants respond that even though the FHSA does not require specific warning language, the issue of compliance does not require a jury decision. An analysis of the Lacquer Seal warning label by this court, they contend, is comparable to other situations where courts have ruled on the sufficiency of a warning label or disclosure statement as a matter of law. *See, e.g., In re Donald J. Trump Casino Sec. Litig.,* 7 *F.*3d 357, 369 (3d Cir.1993) (summary judgment granted where allegedly false statements in prospectus were found to be "immaterial" as a matter of law), *cert. denied,* 510 *U.S.* 1178, 114 *S.Ct.* 1219, 127 *L.Ed.*2d 565 (1994); *Meyer v. International Playtex, Inc.,* 724 *F.Supp.* 288, 293–94 (D.N.J.1988) (summary judgment granted after finding that a manufacturer's label complied with the requirements of the Medical Devices Amendment Act as a matter of law); *see also Moss, supra,* 985 *F.*2d at 742 (label complied with FHSA as a matter of law).

 My examination of defendants' Lacquer Seal label convinces me that it clearly satisfies the labeling requirements of the FHSA, and therefore there is no material issue of fact as to compliance. As previously stated, the front panel of defendants' one gallon can states in clear bold lettering as follows:

*DANGER!*

EXTREMELY FLAMMABLE

VAPORS MAY CAUSE FLASH FIRE

Read Carefully Other Cautions on Back and Side Panels

This same cautionary language appears in white lettering on a red background on the back of the can. A second label on the back contains a 1½ inch by 2 inch flame symbol over the phrase FLAMMABLE LIQUID. The right side panel contains the symbol of a fire extinguisher, a no smoking sign, and the following warnings:

UNUSUAL FIRE AND EXPLOSION HAZARDS: NEVER USE WELDING OR CUTTING TORCH NEAR CONTAINERS, EVEN EMPTY. THIS MATERIAL MAY BURN WITH A FLAME WHICH IS INVISIBLE IN DAYLIGHT.

VAPOR HARMFUL
PREVENT BUILD–UP OF VAPORS
VAPORS MAY IGNITE EXPLOSIVELY
VAPOR IS HEAVIER THAN AIR
VAPORS MAY TRAVEL TO
OTHER THAN WORK AREA

The warnings stated on these labels clearly satisfy the requirements of section 1261(p)(1)(C) and (E) of the regulations, which merely require that warning labels include the words "DANGER" and "FLAMMABLE" "or similar wording descriptive of the hazard." As to the precautionary measures to be followed or taken prior to the product's use, under section 1261(p)(1)(F), defendants' label states in the front panel:

EXTINGUISH ALL FLAMES AND TURN OFF ALL GAS PILOT LIGHTS (in furnaces, hot water heaters, stoves, dryers, etc.) IN WORKING AREA, ADJOINING ROOMS, AND LOWER AND UPPER AREAS. Keep containers and content away from heat sparks, and open flame. SHUT OFF ELECTRIC MOTORS, HEATERS, STOVES AND OTHER SOURCES OF IGNITION DURING USE AND UNTIL ALL VAPORS ARE GONE. DO NOT TURN ON OR OFF ANY LIGHT SWITCHES OR PLUG IN OR UNPLUG ANY ELECTRICAL APPLIANCES. DO NOT SMOKE. Post danger warnings and close off

access to working areas during application and until all vapors are gone. USE ONLY WITH ADEQUATE VENTILATION (positive movement of air and fresh air supplied through open windows and doors during application and until the coating is completely dry.)

These statements, setting forth the action to be taken prior to using the product are then repeated on the back panel. The left side panel contains data relating to Lacquer Seal's health, fire and explosion hazards, and information pertaining to the product's safe handling and use.

Altogether, the warnings and precautions stated on all four sides of defendants' product more than adequately satisfy the requirements of section 1261(p)(1). Moreover, by providing a warning that vapors may travel to other areas and ignite into a flash fire, defendants' product addresses the very risk that caused plaintiffs' injuries and that concerned the FHSA. *See Busch, supra,* 214 *Ill.Dec.* at 840, 662 *N.E.*2d at 406.

Plaintiffs' contentions that defendants' product did not provide enough information on the flammable nature of vapors or the preparations needed for proper ventilation are rejected. Disagreement over the adequacy or sufficiency of the information provided on a label does not necessarily raise material issues of fact as to compliance. What matters is whether the label satisfies the requirements of the FHSA, not whether a label defines every phrase and addresses every potential hazard.

■ The legislative history of the FHSA clearly establishes that cautionary labeling is intended for the ordinary consumer of household products. Warnings and instructions should be easy to understand and to follow by the household user so as not to frustrate the very purpose of the statute. When discussing volatile substances which tend to create flash fires and accidental deaths when used near a pilot light, a circumstance similar to that which confronted the Cantys, the House Committee on Interstate and Foreign Commerce made the following observation:

[E]ven if it were possible to devise directions which, if complied with to the letter, would prevent an explosion—such as a direction not to have a pilot light going in the basement, not to light a match in basement, and to prevent the generation of a

spark in the basement such as might occur from the discharge of static electricity or a spark from walking across the basement floor—it would obviously be unreasonable to expect compliance with such stringent directions by the ordinary user. Moreover, children and others who have not seen the label directions, including strangers such as meter readers, might enter the basement without being aware of the danger, and cause a spark.

Again, there might be offered for household use a hazardous substance which only a skilled operator could be expected to use competently and safely, and the necessary instructions for the safe use of which could not be expected to be understood and followed by the householder. Obviously, therefore, [certain phrases] would tend to frustrate the purpose of the bill as applied to such substances.

[House Comm. on Interstate and Foreign Commerce, Child Protection Act of 1966, H.R.Rep. No. 2166, 89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 *U.S.C.C.A.N.* 4095, 4103.]

The Consumer Product Safety Commission (CPSC), the agency which oversees enforcement of the FHSA, does not require formal approval of a label before a hazardous product may be introduced into commerce. The CPSC, however, has provided sample warning labels for certain products. *See, e.g.,* 16 *C.F.R.* § 1500.130 (acceptable warning label for ethylene glycol based radiator antifreeze); *see also Busch, supra,* 662 *N.E.*2d at 408 (court reviewed suggested label for paint strippers containing methylene chloride). While sample cautionary language is not specifically provided for lacquer, the CPSA has published a sample warning for certain "contact adhesives" which have a similar flash fire propensity as lacquer. The example, found at 16 *C.F.R.* § 1500.133(b) (1994), provides the following warnings:

DANGER

EXTREMELY FLAMMABLE

VAPORS MAY CAUSE FLASH FIRE

Vapors may ignite explosively. Prevent buildup of vapors—open all windows and doors—use only with cross-ventilation. Keep away from heat, sparks, and open flame.

Do not smoke, extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors, and other sources of ignition during use and until all vapors are gone. Close container after use. Keep out of the reach of children.

[*Ibid.*]

According to the CPSC, this warning statement is "the minimum cautionary labeling adequate to meet the requirements of section 2(p)(1) of the act." *Ibid.* The language proposed by the CPSC is virtually identical to that contained on defendant's label and addresses the same risk, the igniting of vapors which are not properly ventilated. Paragraph (c) of that section sets forth instructions for the organization and size of type:

> The words that are in capital letters in the warning statement set forth in paragraph (b) of this section should be printed on the main (front) panel or panels of the container in capital letters of the type size specified in § 1500.121(c). The balance of the cautionary information may appear together on another panel provided the front panel bears a statement such as "Read carefully other cautions on _____ panel," the blank being filled in with the identification of the specific label panel bearing the balance of the cautionary labeling. It is recommended that a borderline be used in conjunction with the cautionary labeling.
>
> [16 *C.F.R.* § 1500.131(c).]

The organization of the cautionary language instructions found on defendant's product label follows the recommendations of paragraph (c).

Because defendant's label complies with the CPSC's recommended language, format and type size, and because the label and the sample warning contained at 16 *C.F.R.* § 1500.133, are so similar, I find that defendants are in compliance with the requirements of 15 *U.S.C.A.* § 1261(p)(1) and (p)(2). Indeed, the label on defendant's Lacquer Seal can appears to be one large warning and cautionary statement with clearly written cautionary language and commonly used symbols on all four sides of the product. I am mindful of plaintiffs' contention that defendant's label did not present information in the correct type face or type size and that the label "presents a cluttered and jumbled array of warnings in a poorly organized fashion." These contentions are also rejected, because I find that defendant's product was properly labeled in accordance with the applicable federal standards. *See* 16 *C.F.R.* § 1500.121. I further note that all the information on the label was read by Samuel Canty to his father, Joseph, before they used the product.

Under the summary judgment standard recently set forth in *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 523–24, 666 *A.*2d 146 (1995), a genuine issue of material fact exists if upon an examination of the competent evidential materials supplied, in a light most favorable to the nonmoving party, a rational jury could find for the nonmovant. Applying this standard to the evidence presented in this case, I find that no rational jury would conclude that the Lacquer Seal label failed to comply with the requirements of the FHSA, particularly in light of the sample warning provided by the CPSC. Hence, there are no material issues of fact in dispute, and defendants' motion to dismiss plaintiffs' complaint is granted.