USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2424

 ANA MARIA TORRES-RIOS, ET AL.,

 Plaintiffs, Appellants,

 v.

 LPS LABORATORIES, INC., ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Salvador E. Casellas, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Coffin and Bownes, Senior Circuit Judges.
 
 

 John E. Mudd for appellants.
 G. William Austin and Jorge F. Freyre for appellees.

August 4, 1998

 
 

 Coffin, Senior Circuit Judge. This product liability action
arises from a workplace accident in which a cleaning product
manufactured by LPS Laboratories, Inc. was ignited by sparks from
a welding torch, triggering a flash fire that severely burned Felix
Martinez Diaz. Martinez' wife and two daughters brought suit,
claiming primarily that the warnings contained in the safety
instructions accompanying the product were inadequate. The
district court granted summary judgment for LPS, concluding as a
matter of law that the product warnings met all applicable
standards and that the alleged deficiency in the warnings was not,
in any event, the cause of the accident. The court also rejected
appellants' defective design claim as untimely. We affirm.
 The following facts are undisputed. Martinez was injured on
May 4, 1995, while using LPS's product, CFC-Free Electro Contact
Cleaner, to clean a piece of electrical equipment known as the
"thermatool." The cleaner had been delivered to Martinez's
employer, Bayamon Steel, in a 55-gallon drum that was kept in a
storage area, and Martinez used a pail to carry a quantity of the
liquid from the drum to the thermatool. At the time of the
accident, he was spraying the chemical onto the internal electrical
parts of the thermatool. A few feet away, other employees were
working to repair a mill. Their use of a welding torch ignited the
cleaner and triggered a flash fire in which Martinez suffered
serious burns over more than fifty percent of his body.
 Safety warnings appeared on labels on the top and side of the
drum. Among other information, the labels contained the word
"DANGER," advised that the cleaner was "EXTREMELY FLAMMABLE," and
specified certain actions to be taken or avoided (e.g., "Keep away
from heat, sparks and open flame"; "Prevent buildup of vapors --
use adequate cross-ventilation"; "[T]urn off all sources of
ignition during use and until vapors are gone"). A "material
safety data sheet" ("MSDS"), required by federal law, see 29 C.F.R.
 1910.1200, also was available. Under the heading "Unusual fire
and explosive hazards," it warned that "[f]lammable vapors which
are heavier than air may accumulate in low areas and/or spread
along the ground away from handling site" and it instructed that
the cleaner should be used and stored "with adequate ventilation"
and "away from ignition sources."
 These safety materials all were in English. The drum also
bore a diamond-shaped warning label that contained a flame symbol
and "FLAMMABLE LIQUID" written in white on a red background.
 The central issue in this case is the adequacy of the
information provided by LPS concerning the cleaner's flammability. 
We first consider whether the district court properly granted
summary judgment on that issue and then briefly address plaintiffs'
effort to litigate a defective design claim.
A. Adequacy of Warnings
 Even when considered in the light most favorable to the
plaintiffs, as we do upon review of a district court's grant of
summary judgment, see Flynn v. City of Boston, 140 F.3d 42, 44 (1st
Cir. 1998), the warning defect claim is lacking. See Aponte-Riverav. Sears Roebuck de P.R., 98 JTS 12, Certified Translation at 10
(1998) (App. V. at 1282) (noting three types of defective product
claims, including those based on inadequate warnings). Although
the record contains evidence from plaintiffs' experts on ways to
improve the information provided with the cleaner, this is not
enough to establish that the product is defective.
 A detailed scheme of federal statutes and regulations governs
the handling and labeling of hazardous substances. See, e.g., 15
U.S.C. 1261-1277 (Federal Hazardous Substances Act); 29 C.F.R.
 1910.1200 (governing hazard communication in the workplace); 16
C.F.R. 1500.121 (requirements for safety warnings). These
provisions are designed to set a comprehensive standard for
workplace safety, see 29 C.F.R. 1910.1200(a)(1), (2), and "to
preempt any legal requirements of a state, or political subdivision
of a state, pertaining to this subject," id. at 1910.1200(a)(2). 
To succeed, plaintiffs must demonstrate that defendant's warnings
failed to satisfy the federal standards. See Moss v. Parks Corp.,
985 F.2d 736, 742 (4th Cir. 1993) (granting summary judgment to
manufacturer of paint thinner based on finding that product was
properly labeled in accordance with federal standards).
 Plaintiffs assert three primary deficiencies in the labels and
other safety information: the warnings were given only in English
even though the dominant language in Puerto Rico is Spanish; the
safety information was too small to be seen easily; and the warning
failed to convey the seriousness of the fire danger, particularly
when the cleaner is sprayed (as it was in this case). We consider
each of these in turn.
 (1) Absence of warnings in Spanish. The regulation that sets
out the necessary elements of a safety label does not explicitly
contain a language requirement. See 29 C.F.R. 1910.1200(f)(1). 
Two provisions of the same regulation make it clear, however, that
the obligation under federal law is to provide the information in
English. Subsection (f)(9) states that an employer shall ensure
that labels or other forms of warning are in English and that they
may add information in other languages, as appropriate. Subsection
(g) explicitly states that the material safety data sheet, which
manufacturers must provide, "shall be in English (although the
employer may maintain copies in other languages as well)." 
 These provisions thus establish that federal law requires
manufacturers to provide safety warnings only in English and that
it is the responsibility of individual employers, at their
discretion, to provide additional warnings in other languages. In
this case, the 55-gallon drum containing the cleaner also
prominently displayed the pictorial of a flame, which is considered
a universal symbol of flammability. That label filled any language
gap, putting users on notice that precautions needed to be taken
to avoid fire. Although the pictorial did not fully explain the
danger, it provided clear warning that, before working with the
product, the user should either read the accompanying safety
instructions or find someone to translate them. Absence of Spanish
warnings, therefore, did not violate federal law and could not
render the cleaner a defective product. Cf. Ramirez v. Plough, 863
P.2d 167, 174 (Cal. 1994) ("Defining the circumstances under which
warnings or other information should be provided in a language
other than English is a task for which legislative and
administrative bodies are particularly well suited.").
 (2) Size of type. One of plaintiffs' experts, Dr. Stuart
Parsons, testified in deposition and stated in a report that the
lettering on the instructions label was too small for easy reading. 
In reaching that conclusion, he relied on standards developed by
professional and technical societies through the American National
Standards Institute, whose guidelines do not have the force of law. 
There is no evidence that the label fails to satisfy even the
strict size requirements for safety labels intended or packaged in
a form suitable for household use, see 15 U.S.C. 1261(p)(2); 16
C.F.R. 1500.121(a)(1), (c) (specifying type size and other
"prominence, placement, and conspicuousness" requirements). In the
workplace, containers of hazardous materials are required to bear
labels or other indicators with "the identity of the material and
appropriate hazard warnings." 29 C.F.R. 1910.1200 App. E(4)(A). 
Such labels
 must be legible, and prominently displayed. There are no
 specific requirements for size or color, or any specified
 text.

Id. Indeed, another of plaintiffs' experts, Dr. Barry Sanders,
noted that "[t]his label probably meets the letter of the law."
Although he added, "but not the spirit of the law . . . ," he
evidently was suggesting that the federal regulations should be
stricter.
 We note, moreover, that the reasonable size of a warning must
be linked to whether it is sufficiently eye catching to put the
product user on notice of the relevant hazards. Here, the
prominent red-and-white pictorial serves the function of drawing
attention to the fire danger from the cleaner. The fact that the
more detailed information is not presented in the optimal size for
distance viewing is thus less significant than if it alone was
relied upon to alert the user to the danger. The same rationale
takes care of plaintiffs' related argument that there was
insufficient contrast between the colors used for the safety
information label, which featured black text on a blue background. 
The size and color of the warning label therefore did not render
this product defective.
 (3) Content of the label. Plaintiffs contend that the label
did not convey the seriousness of the fire danger from the vapors
discharged by the cleaner, and failed in particular to warn of the
magnified risk of a flash fire when the product is sprayed. We
agree that users would be better informed if the label contained
more information. That, however, would be true at most levels of
detail, and the question we face here is not whether the label is
perfect but whether a jury could find that the product is
unreasonably dangerous with its current warnings. We conclude that
such a finding is insupportable on this record. Cf. Canty v. Ever-
Last Supply Co., 685 A.2d 1365, 1377 (N.J. Super. 1996)
("Disagreement over the adequacy or sufficiency of the information
provided on a label does not necessarily raise material issues of
fact as to compliance. What matters is whether the label satisfies
the requirements of the FHSA, not whether a label defines every
phrase and addresses every potential hazard.").
 Plaintiffs point to an ANSI recommendation that a warning for
a product of this type include: "VAPOR MAY CAUSE FLASH FIRE." The
description of the label given above shows, however, that the
safety label warned against a buildup of vapors, stating that
adequate cross-ventilation should be maintained. See supra at 3. 
The MSDS further warned that "[f]lammable vapors which are heavier
than air may accumulate in low areas and/or spread along the ground
away from handling site" and it instructed that the cleaner should
be used and stored "with adequate ventilation" and "away from
ignition sources." We think it a matter of common sense that more
vapors are produced when a liquid is sprayed, and while stating
that fact explicitly would reinforce the awareness of danger, its
omission in light of the information that was provided cannot
properly be termed a product defect. In sum, all relevant
information related to the hazard that caused this accident was
provided. While the ANSI statement is more direct, its content
duplicates other information that was provided.
 We emphasize, as an aside, that what occurred in this case was
explicitly warned against, both by the label and federal law. The
safety information advised that the cleaner and sparks -- a normal
byproduct of welding -- were a dangerous combination. To avoid
precisely the sort of accident that occurred, federal law
explicitly prohibits welding within close proximity to the use of
flammable liquids. See 29 C.F.R. 1910.252(a)(2). The
regulation specifies thirty-five feet as an appropriate distance
between welding and combustibles; the welding here took place no
more than five or six feet from Martinez's work area. Even if in
other contexts more information would have been necessary to put
the user on notice of the risk of fire, that was not the case
here.
 We therefore hold that, on this record, there is no material
dispute of fact concerning the adequacy of the warnings on the drum
of Contact Cleaner. The combination of the flame pictorial and
safety information labels satisfied applicable federal regulations
and provided sufficient notice to users of the highly flammable
nature of the cleaner and the danger of accumulated vapors from it. 
We therefore affirm the district court's grant of summary judgment
on the defective warning claim.
 B. Design Defect Claim.
 LPS moved for summary judgment on the defective warnings claim
in February 1997. Plaintiffs obtained an extension for filing
their opposition and did so on May 16, 1997. In it, for the first
time in the case, they explicitly also alleged that the cleaner was
defective in design. On June 18, 1997, some ten months after the
court's deadline for filing amendments to the pleadings, plaintiffs
sought permission to amend the complaint to add a defective design
claim.
 In denying leave to amend in August 1997, the district court
termed the motion "belated" and concluded that plaintiffs should
have presented the design defect claim at least by the time the
parties prepared the Joint Case Management Memorandum the previous
fall. On appeal, plaintiffs argue that the district court erred in
rejecting the claim both because it was implicitly included within
their original pleadings and because they could not develop the
claim until they obtained complete information from LPS in April
1997.
 We have little difficulty in affirming the district court's
judgment on this issue. At no time from the filing of the original
complaint through the pretrial order did plaintiffs invoke language
that signals a design defect claim, which most commonly would be an
allegation that the product's benefits did not outweigh its risks. 
See, e.g., Collazo-Santiago v. Toyota Motor Corp., No. 97-1365,
slip op. at 7-8 (1st Cir. July 9, 1998) (discussing test for design
defect in Puerto Rico) (citing Aponte-Rivera, Certified Translation
at 10, 29 n.9). Plaintiffs repeatedly asserted only that
defendants produced an "extremely" or "inherently" dangerous
product that "also" was defective because of inadequate warnings. 
But an allegation of danger does not alone present a design defect
claim; indeed, describing a product as "inherently dangerous" is an
element of a defective warnings claim. See, e.g., Rhodes v.
Interstate Battery System of America, 722 F.2d 1517, 1521 (11th
Cir. 1984) (manufacturer of dangerous product must use reasonable
efforts to warn potential users; question regarding warning was
whether it was adequate to apprise user of inherent dangers); id.(Hill, J., dissenting) (battery is a defective product if consumers
are not warned of inherently dangerous characteristics); East Penn
Mfg. Co. v. Pineda, 578 A.2d 1113, 1118 (D.C. Ct. App. 1990) ("The
failure to warn branch of strict liability recognizes that some
products, even if perfectly designed and manufactured, cannot be
made completely safe for their intended use."); Aponte-Rivera,
Certified Translation, at 13 (noting that one element of warnings
claim is that "manufacturer knew or should have known of the
inherent danger of the product" (emphasis added)).
 At best, therefore, plaintiffs' assertion that the cleaner
"also" was defective based on its warnings gave a hint of a
possible additional claim. Given the absence of any development of
such a claim by the time of the Joint Case Management Memorandum,
we join the district court in concluding that a design defect claim
was not raised by the complaint.
 We similarly concur in the court's rejection of plaintiffs'
effort to amend the complaint to add a design defect theory. 
Plaintiffs defend their tardiness by stating that they were unable
to flesh out a design defect allegation until they deposed LPS's
experts in April 1997, and they blame LPS for withholding
information during the early stages of the case. We are
unpersuaded. While meaningful discovery might have been necessary
to develop facts to support a design defect claim, the allegation
that the cleaner was unjustifiably (as distinguished from
"inherently" or "extremely") dangerous strikes us as having been an
obvious alternative -- if intended -- from the outset.
 We note that plaintiffs' brief identifies the material safety
data sheets for LPS's other contact cleaners as significant newly
obtained evidence. Those sheets presumably were available from
multiple sources and could have been obtained through purchase of
the products. In any event, if LPS was unfairly blocking
plaintiffs' legitimate earlier efforts to obtain relevant
information, plaintiffs should have informed the court of the
problem before the case had proceeded to the brink of summary
judgment. Allowing addition of a new theory of liability after the
defendant's February motion for summary judgment and after
discovery had closed in April unquestionably would prejudice
defendant, whose focus until that time had been on the adequacy of
the warning labels and not on the costs and benefits of the product
itself. In these circumstances, we find no abuse of discretion in
the district court's determination that the proposed amendment was
too late. See, e.g., Hayes v. New England Millwork Distributors,
602 F.2d 15, 19 (1st Cir. 1979) ("undue delay" can be a basis for
denying leave to amend).
 For the foregoing reasons, the judgment of the district court
is AFFIRMED.